MUNRO *v.* ELK RAPIDS SCHOOLS.

OPINION OF THE COURT.

1. APPEAL AND ERROR — BRIEFS — COUNTERSTATEMENT OF FACTS — COURT RULES.

The Supreme Court, upon appellant's request, will disregard a counterstatement of facts in the appellee's brief which does not comply with the court rule requiring the appellee to point out the inaccuracies in appellant's statement and inappropriately sets forth factual allegations not previously on the record (GCR 1963, 814.2).

2. SCHOOLS AND SCHOOL DISTRICTS—STATE AGENCIES—TEACHERS' TENURE ACT—ADMINISTRATIVE CONTROL.

School districts, though state agencies, are governed locally and their controlling boards are chosen by the electorate so that if the legislature intended to deprive the local governing bodies of administrative control of teachers, that intent should have been definitely stated in the teachers' tenure act (MCLA §§ 38.71 *et seq.*, 340.1 *et seq.*).

3. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHER.

The board of education of a school district may not require of a teacher a probationary period of more than two years but, for the benefit of a teacher, may grant a third year of probation.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 691.
[2] 47 Am Jur, Schools §§ 12, 13.
[3, 6, 9] 47 Am Jur, Schools § 130.
[4, 7, 13] 47 Am Jur, Schools § 131.
[5] 47 Am Jur, Schools §§ 127–140.
[8] 47 Am Jur, Schools § 127.
[10] 47 Am Jur, Schools §§ 130–133.
[11, 12] 47 Am Jur, Schools §§ 129–140.

4. Schools and School Districts—Statutes—Teachers' Tenure Act—Probationary Teacher.

Legislature, by 1963 amendments to teachers' tenure act, made clear that the provisions of that act requiring discharge to be based on reasonable and just cause would not apply to teachers serving a probationary period (MCLA § 38.84).

5. Schools and School Districts—Statutes—Teachers' Tenure Act—Disputes.

The legislature intended, as expressed in the due process and right of appeal provisions of the teachers' tenure act, that disputes between controlling boards and teachers should be settled and determined by the State Tenure Commission, which the legislature created in that act (MCLA §§ 38.101–38.105, 38.121, 38.131 *et seq.*).

6. Schools and School Districts—Statutes—Probationary Teacher—Rehiring.

The teachers' tenure act does not impose a statutory duty on school boards to rehire probationary teachers who have completed two years of satisfactory service; the act requires only that any probationary teacher not on continuing contract shall be notified in writing, at least 60 days before the close of the school year, if he is not to be employed for the ensuing school year, the decision to rehire being within the discretion of the school board (MCLA §§ 38.83, 38.91).

7. Schools and School Districts—Probationary Teacher—Contracts—Teachers' Tenure Act.

A school board's notice to a probationary teacher on a year-to-year contract that the teacher would not be rehired for the ensuing school year was not a dismissal or termination of contract, and did not require following the procedure for dismissing a teacher with continuing tenure (MCLA §§ 38.83, 38.101–38.105, 38.121).

8. Constitutional Law—Statutes—Teachers' Tenure Act.

The Michigan teachers' tenure act does not violate the due process of law requirements of either the United States or the Michigan Constitutions (US Const, Am 14; Mich Const 1963, art 1, § 17; MCLA § 38.71 *et seq.*).

9. Constitutional Law—Due Process—Schools and School Districts—Statutes—Probationary Teacher—Rehiring.

Plaintiff teacher was not denied due process by failure of the school board to give reasons for not rehiring him as a teacher

while he was within the probationary period where there was no allegation or recitation of fact in the record even implying that the board was guilty of racial, religious, political or any other form of improper action or discrimination.

DISSENTING OPINION.

T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ.

10. SCHOOLS AND SCHOOL DISTRICTS—PROBATIONARY TEACHER—TEACHERS' TENURE ACT.

*Plaintiff teacher was entitled to tenure status under the teachers' tenure act where he was employed as a probationary teacher by the board of education of a school district, had served two years without written notice that his work was unsatisfactory, and was then notified that he would not be employed for the ensuing year (MCLA § 38.71 et seq.).*

11. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—INTERPRETATION—REHIRING.

*Interpreting the teachers' tenure act provision that "any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified at least 60 days before the close of the school year that his services will be discontinued", in a manner to permit a local school board to terminate the services of a satisfactory teacher as well as an unsatisfactory teacher is contrary to the spirit and letter of the law (MCLA § 38.83).*

12. SCHOOLS AND SCHOOL DISTRICTS—STATUTES—TEACHERS' TENURE ACT—PROBATIONARY TEACHER.

*The intent of the teachers' tenure act was to eliminate capricious and arbitrary employment policies of local school boards which include the probationary as well as the tenure period of a teacher's employment; and that act recognized the need for a trial period, its concomitant danger and the potential abuse of a school board's discretion (MCLA § 38.71 et seq.).*

13. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE ACT—PROBATIONARY TEACHER—DISCRETION—REMOVAL OF TEACHER.

*The satisfactory completion of a teacher's probationary period requires, under the teachers' tenure act, that the teacher must be hired because the school board's discretion has then been removed and, therefore, cause must be shown for the teacher's removal (MCLA § 38.71 et seq.).*

Appeal from Court of Appeals, Division 3, Quinn, P. J., and Holbrook and T. M. Burns, JJ., affirming Antrim, Charles L. Brown, J. Submitted March 11, 1970. (Calendar No. 24, Docket No. 52,508.) Decided July 17, 1970. Rehearing granted November 30, 1970.

17 Mich App 368, affirmed.

Complaint by Scott Munro for writ of mandamus against the Elk Rapids Schools and the Board of Education of Elk Rapids Schools to compel defendant to employ him as a tenure teacher. Writ denied and complaint dismissed. Plaintiff appealed to Court of Appeals. Affirmed. Plaintiff appeals. Affirmed.

*Foster, Campbell, Lindemer & McGurrin* (*James A. White* and *Theodore W. Swift,* of counsel), for plaintiff.

*Zerafa & Zerafa* (*Robert J. Kievit,* of counsel), for defendants.

*Amici Curiae:* American Civil Liberties Union of Michigan (by *Erwin B. Ellmann*).

American Civil Liberties Union (by *Melvin L. Wulf,* Legal Director).

KELLY, J. May 20, 1968, plaintiff filed in the circuit court for the county of Antrim his complaint seeking a writ of mandamus and other relief, alleging that he is a duly certified and qualified teacher holding a provisional certificate issued by the Department of Education of the State of Michigan; that he commenced employment in defendant school dis-

trict in September of 1966 and taught at the Elk
Rapids High School during the entire 1966–67 and
1967–68 school years; that on or about November 21,
1967, the principal of the Elk Rapids High School,
Mr. Donald Bellinger, evaluated plaintiff after hav-
ing observed his teaching, said evaluation showing
plaintiff's work to be satisfactory in every respect
and stating that Mr. Bellinger would "not hesitate
to recommend him for tenure at the end of this
year"; that on about January 17, 1968, Mr. Bellinger
once again evaluated plaintiff and once again showed
plaintiff to be a satisfactory teacher in every respect
and recommended that he be given a tenure contract
for the 1968–69 school year; that plaintiff received a
letter from defendant school board, dated February
20, 1968, stating:

"I regret to inform you that on February 12, 1968,
the Elk Rapids School Board directed me to notify
you that you would not be offered a contract for the
1968–69 school year."

Plaintiff further alleged that defendant school
board through its letter of February 20, 1968 to
plaintiff, purported to comply with the provisions of
the Michigan teachers' tenure act (MCLA § 38.71 *et
seq.* [Stat Ann 1968 Rev § 15.1971 *et seq.*]), but,
in fact, did not comply with the express mandatory
requirements of Article II, § 3, of said act that
probationary teachers be sent "a definite written
statement as to whether or not his work has been
satisfactory"; that plaintiff, acting through his attor-
neys, sent a letter to defendants requesting them to
place him on tenure and issue him a tenure contract
for the 1968–69 school year and refrain from hiring
any person to replace him.

In Count II of his complaint, plaintiff alleged:

"Defendants' action in attempting to discharge
plaintiff have been unreasonable, arbitrary and ca-

pricious, and defendants have attempted to deprive plaintiff of his employment without according him either the substantive or procedural due process of law to which he is entitled under the equal protection and due process clauses of the United States and Michigan Constitutions or the Michigan teacher tenure act.

"Defendants' action have further deprived plaintiff of those rights he enjoys under § 1985 and other sections of the Federal Civil Rights Act, as amended, see 42 USCA § 1985."

On the hearing to show cause why a writ of mandamus should not issue (June 3, 1968), counsel for defendants informed Circuit Judge Charles L. Brown that on that day he had filed a motion for summary judgment and realized that he had not given the statutory four-day notice, but that counsel for plaintiff "has indicated I may argue that matter today, and the arguments, as far as summary judgment, would be the same arguments as against the complaint filed in this matter."

Disagreeing, plaintiff's counsel stated:

"It is my understanding we are here today on the writ of mandamus, why it shouldn't issue. I cannot see why we cannot just limit our argument on that point. And I am not waiving notice on the summary judgment. I am not sure at this time I would want to waive four-days notice. I think on the hearing of the order to show cause we can dispose of this case, and there is no need to get into argument as to whether we should argue the order to show cause or the summary judgment."

No affidavits or testimony were presented and the hearing was completed on that day and confined to arguments of counsel.

Plaintiff's position before the trial court can be summarized by quoting the following two paragraphs:

"As I see this case, there are essentially two main issues:   the first contention of the plaintiff is that the school board did not follow the simple but express provisions of the teacher tenure act in attempting to dismiss the plaintiff; and it is my contention, if the court holds for plaintiff in this point, that, of course, will end the case, and the board would have to give him a contract.   The second point is that even if it can be assumed that proper notice was given under the tenure act, the actions of the Elk Rapids Board were arbitrary and capricious, and contrary to the terms of the Michigan teacher tenure act and the due process clauses of the Michigan State Constitution.

\*   \*   \*

"It is the plaintiff's first contention, and I think it is most important, that this Board of the Elk Rapids Schools did not follow the very simple but express mandates of the teacher tenure act; that is, they did not give him a definite written statement as to whether or not his work was satisfactory; and a mere letter stating that he would not be given a contract does not meet the express statutory requirement."

Defense counsel informed the trial court that he was not arguing "whether his [plaintiff's] work was satisfactory or not"; that the board had a reason, "but they have not given him the reason [and] I don't think they are bound to."

The following from transcript of hearing before the trial court, we believe, sufficiently summarizes defendants' position:

"Our school board did act.   On the 20th day of February, 1968, they sent Mr. Scott Munro a letter telling him they regretted it but he was not to be offered a contract for the next year; which was within their right.

"Mr. White has jumped over to the continuing tenure provisions of this tenure act in using that as

an example, the fact he has completed two years that they cannot discharge him, even if they don't like the way 'he parts his hair.'

"It is the privilege and within the discretion of the school board to determine whether or not they will give a contract to anybody who is a probationary teacher, whether their work is satisfactory or unsatisfactory. The school board acted, and they told him he was not to get a contract for the next year. He complains as to not getting notice as to why.

"I don't believe that is necessary. This is a discretionary matter with the school board; and what plaintiff is asking this court to do is to substitute the orders of the school board by ordering the school board to give this tenure contract; and this is not within the provisions of the law or the tenure act itself, or the intention of the legislature."

On July 16, 1968, the trial court filed its "Decision and Order Denying Mandamus," and on May 26, 1969, the Court of Appeals affirmed the trial court.[1]

Plaintiff's brief in this Court (October 31, 1969), presents two issues:

1. Did defendants' action violate the provisions of the Michigan teachers' tenure act?

2. Were the actions of the board violative of plaintiff's rights under the due process and equal protection clauses of the Michigan and United States Constitutions?

Defendants' brief in this Court (January 17, 1970) under the heading "Counter-Statement of Question Involved," states:

"Defendant-appellee wishes to bring to the attention of the Supreme Court that the question of due process was not litigated at the trial level, nor was it considered by the Court of Appeals because plaintiff-appellant rested his argument on the interpreta-

---

[1] *Munro* v. *Elk Rapids Schools* (1969), 17 Mich App 368. Appeal granted (1969), 382 Mich 773.

tion and application of the Michigan teacher's tenure act. Defendant-appellee respectfully informs this high Court that the factual conditions which plaintiff-appellee alleges have never been determined, and this status exists because plaintiff-appellee has not made the effort by petitioning to bring them forth."

Defendants in their "Counter-Statement" and "Counter-Statement of Facts" present the following:

"Plaintiff-appellant's services were not satisfactory as a matter of fact because the only fact tried on this question was a report from the principal, and the procedure for teacher evaluation starts with the principal, who reports to the superintendent, who in turn reports to the Elk Rapids Board of Education. It is fact that the principal is the only party in the procedural chain of administrative authority who did report the plaintiff-appellant satisfactory. The remaining eight evaluating members reported, for two consecutive years, directly and indirectly, that plaintiff-appellant's work was questionable in the areas of competence and effectiveness. This factual procedural material is a matter of record.
*   *   *

"At this meeting [February, 1967] Mr. Munro's first year record was discussed publicly, complaints were heard and discussed, and the Board of Education agreed after some debate to permit the plaintiff-appellant, Scott Munro, one more year of probationary teaching as an opportunity to overcome the problems at that time discussed by the board.

"In February of 1968, the Elk Rapids Board of Education met at its normal meeting to again discuss the tenure status of probationary teachers. Plaintiff-appellant, Scott Munro's name was again on the list to be questioned. At a noticed and public meeting the members of the Elk Rapids Board of Education discussed the current complaints and teaching status of plaintiff-appellant, Scott Munro. At this meeting members of the general public were given

an opportunity to express their opinions on Mr. Munro's teaching. Several parents of students in Mr. Munro's classes were present, expressed their opinions and were heard by the board. At the conclusion of this meeting in February of 1968, it was determined by a majority vote of the board that plaintiff-appellant, Scott Munro, would not be granted the status of tenure in the Elk Rapids school system, and in effect not be offered a third year teaching contract. Said board passed a resolution not to re-hire Mr. Munro for the 1968–69 school year. In accordance with the Michigan teacher tenure act, the secretary of the Elk Rapids Board of Education was instructed to notify Mr. Munro of this action in a letter. Said requirement was completed in a letter to Mr. Munro from the secretary of the Elk Rapids Board of Education, dated February 20, 1968.

"Upon receipt of this letter, Mr. Munro requested an explanation from the board concerning its decision not to rehire him. Mr. Munro was granted a hearing which took place in March of 1968, at the Elk Rapids Board of Education's regular March meeting. At this meeting Mr. Munro was present with a representative from the Michigan Education Association. Mr. Munro was in fact represented by Maurine Wyatt of the Michigan Education Association, and the Elk Rapids Board of Education was represented by Mr. James R. Zerafa, legal counsel for said board. At this hearing, Mr. Munro, and his representative, were given an opportunity to hear the position of the board and to offer their counterpositions which did in fact take place to the dissatisfaction of the plaintiff-appellant, Mr. Scott Munro. The Elk Rapids Board of Education decided to affirm its position of February, 1968."

In a reply brief, plaintiff calls to our attention GCR 1963, 814.2 and "requests this Court to disregard the counter statement of facts in defendants-appellees brief" because said counter-statement does not comply with our rules which require appellee to

point out the inaccuracies, if any, in appellant's statement of facts, and, also, because the said statement inappropriately sets forth many factual allegations which were not previously placed on the record in this matter.

We grant plaintiff's request and in deciding this appeal we consider only the facts brought before the trial court and plaintiff's complaint.

## I

## THE TEACHERS' TENURE ACT

Plaintiff claims in this Court, as he did in the trial court, that pursuant to the Michigan teachers' tenure act a writ of mandamus should have been issued.

The sections of the act upon which plaintiff relies, and other parts of the act we deem worthy of consideration in determining this appeal, are attached as an appendix to this opinion.

The following from plaintiff's brief summarizes his contention:

"Appellant readily admits that school district should be given some discretion in determining whether or not a particular probationary teacher's work is satisfactory. He contends, however, that Article II, § 3 and Article III, § 1 of the teachers' tenure act dictates that once it is established that a probationary teacher's work is satisfactory, either as a matter of fact or by operation of law, the school district is obligated to rehire said teacher and, after two years of satisfactory service, a school board must grant him tenure in that school district, absent some compelling reason not found in this case, such as a 'necessary reduction' in personnel due to a loss of students or income. Plaintiff also contends that, in view of the clear, express provisions of Article II, § 3, of the Michigan teacher tenure act, the decision of the school board as to whether to renew the con-

tract of a probationary teacher must be related to the satisfactoriness of the teacher's work in that district during the probationary period. Therefore, when plaintiff completed his second year of probation and the board did not give him any notification that his work was unsatisfactory, he gained tenure status and, pursuant to the Tenure Act, the Elk Rapids Board had a clear duty to offer him a contract for the next school year.

"The interpretation urged by plaintiff is supported by the decision of the Michigan Supreme Court in *Wilson* v. *Flint Board of Education* (1960), 361 Mich 691."

The following excerpts from defendants' brief brings into focus the board's answer to plaintiff's contention:

"The high school principal, who was only one individual in an evaluation procedure involving nine individuals, rated plaintiff-appellant as satisfactory by a written report. 'There is no proof or evidence offered by the plaintiff that the board acted in an arbitrary manner by not offering the plaintiff a contract for the third year.'

"The tenure act is a statute which provides a two year period of discretion to local school boards after which time the teacher must either be granted the status of security called 'tenure,' or the Board of Education must exercise their discretion and terminate the employment. The purpose and intent of the tenure act is to establish a procedure whereby school systems are free to select their own teachers, and those teachers who are selected are subsequently free to teach without arbitrary and capricious local political anxiety to affect their performance. The procedure unambiguously sets forth a two year period permitting full administrative discretion, and a subsequent indefinite period of employment security subject only to just cause.

"It is plain that it was the intention of the legislature when adopting the act, to make it mandatory on the controlling board to act and inform the second year probationary teacher in writing that he would not be offered a third year contract or employed by the school district for the next year, otherwise he attained tenure and had to be given employment.

"*Wilson* v. *Flint Board of Education* (1960), 361 Mich 691 does not settle the question posed in the case at bar. In the *Wilson* case, the school board did not give a written statement to the probationary teacher during the first two years, at the end of the third year they notified her she would not be rehired for the following year. This the Court said they could not do because she had acquired tenure status at the end of two years and they could only dismiss her by compliance with the provisions of the tenure act. The *Wilson* case is the only Michigan case touching on the matter of probationary teachers."

The trial court's opinion emphasized that "plaintiff was not on a continuing contract for the ensuing year of 1968 and 1969, and that defendant, on February 20, 1968, notified plaintiff in writing he would not be offered a contract for the 1968–69 school year, in pursuance of MCLA § 38.83 (Stat Ann 1968 Rev § 15.1983), § 3; that such notice was not a dismissal nor a termination of a contract," and the Court of Appeals concluded its opinion with the following paragraph (p 371):

"This case does not involve discharge or demotion. It is a case of not rehiring plaintiff, which the board could decide to do, and its action is controlling on the facts of this case. We find it unnecessary to discuss the constitutional issues raised by plaintiff."

The teachers' tenure act was first construed by this Court in *Rehberg* v. *Board of Education of Melvindale, Ecorse Township School District No. 11, Wayne County* (1951), 330 Mich 541. In that opinion, com-

menting upon legislative intent in regard to the control that was given to school boards, we stated (pp 547, 548):

"School districts, though state agencies, are governed locally and their controlling boards are chosen by the electorate. (See PA 1927, No 319 [CL 1948, § 341.1 et seq. (Stat Ann § 15.1 et seq.)].)[2] If the legislature intended to deprive local governing bodies of administrative control of teachers, that intent should have been definitely stated in the tenure act."

## CONCLUSION:

We agree with defendants that *Wilson* v. *Flint Board of Education* (1960), 361 Mich 691, does not settle the question here before our Court. The issue in the *Wilson* case was whether the board could establish a three-year probationary period, give "no written statement as to the character of her work" during the first year, "a failure to give her any written notification whatever as to the quality of her work" during the second year, and, during March of the third year, notify her of her discharge effective June 12th.

We held:

"The board of education of a school district may not require of a teacher a probationary period of more than two years but, for the benefit of a teacher, may grant a third year of probation" (Syl 2),

and stated that the failure of the board during the two-year period to in any way advise plaintiff as to whether her work was satisfactory or not established plaintiff as a tenure teacher as she commenced teaching during the third year.

---

[2] Repealed by PA 1955, No 269, and replaced by "The School Code of 1955," CLS 1961, § 340.1 et seq. (Stat Ann 1968 Rev § 15.3001 et seq.).

We concluded the *Wilson* opinion as follows (p 697):

"Under the view we have taken of the case it follows that the State Tenure Commission had jurisdiction of the matter and we need not pass upon its jurisdiction over probationers as such. We approve the commission's remand to the Flint School Board. It will conduct a proper hearing on the merits after specific charges shall have been furnished the teacher, all in accordance with the provisions of the teachers' tenure act. Costs to appellee."

An examination of Articles II, III and VI of the teachers' tenure act (all attached to this opinion as an appendix) clearly discloses the distinction the legislature has made between the probationary period teacher (Article II) and the continuing tenure teacher (Article III). The right to challenge a board's decision granted to the teacher who has acquired "continuing tenure" is not granted to the probationary teacher.

This distinction, which has existed since the teachers' tenure act was enacted in 1937, was accentuated by the 1963 legislature by additions and amendments (PA 1963, No 242). The legislature added § 4 to the three previous sections of Article II, entitled "Probationary Period," thereby making doubly sure that the provisions in regard to discharge being based on reasonable and just cause (Article IV) would not apply to teachers serving a probationary period. The same act amended Article VI, § 1, by changing the words, "A teacher shall have the right to appeal any decision of a controlling board" to read: "A teacher *who has achieved tenure status* may appeal any decision of a controlling board  *  *  *  ." (Emphasis ours.)

It is apparent that it was legislative intent as expressed in Articles IV and VI that disputes between

controlling boards and teachers should be settled and determined by the State Tenure Commission, which the legislature created by Article VII of the teachers' tenure act.

During oral argument when counsel for plaintiff was asked why he was before our Court instead of before the commission, the transcript of argument discloses:

"*Mr. White:* Article 2, § 4, states: 'Articles 4, 5 and 6 shall not apply to any teacher deemed to be in a period of probation.'

"*The Court:* So this plaintiff here now, then had to go directly to court?

"*Mr. White:* That is right. That is why we went in that direction rather than to the commission. Articles 4, 5 and 6 deal with the right to a hearing and the right to appeal to the Tenure Commission. That avenue is not open to the probationary teacher."

We agree with the trial court's finding that the board's notice was not a dismissal or termination of contract; that plaintiff was not on a continuing contract for the year 1967–68, and that the board's action notifying plaintiff in writing that he would not be offered a contract for 1968–69 was authorized by statute. The Court of Appeals' determination in regard to this issue is affirmed.

## II

## *DUE PROCESS*

Plaintiff claims his constitutional rights were violated because the board did not make known the reason why he would not be offered a contract for the 1968–69 school year.

Supporting this contention, plaintiff calls our attention to *Milford* v. *People's Community Hospital Authority* (1968), 380 Mich 49, where we considered

a physician's denial of hospital privilege under the by-laws of the hospital and where we held "there are absolutely no standards in these by-laws which would meet the constitutional due process requirements."

Arguing that the same rights should be extended to plaintiff as was extended to the doctor in the *Milford* case, plaintiff states:

"What minimal procedural rights must be accorded a probationary teacher? The basic elements of procedural due process were stated by this Court in *Milford* v. *People's Community Hospital Authority* (1968), 380 Mich 49, at p 58, when Justice T. M. KAVANAGH stated:

" 'Unless the right is waived, the person charged is at least entitled to:

" '(1) Notice of a time and place of hearing.

" '(2) A hearing before a properly authorized body.

" '(3) A reasonably definite statement of the charges preferred against the accused.

" '(4) The right to cross-examine the witnesses who testify against him.

" '(5) The right to produce witnesses in his own behalf.

" '(6) A full consideration and a fair determination according to the evidence of the controversy.'

"To this list the plaintiff would add the right to be represented by counsel."

After quoting as above from *Milford,* plaintiff asks this Court the question:

"If physicians, who have no statutory protection from dismissal, are entitled to these procedural safeguards when being expelled from a hospital, what reason is there for granting teachers anything less? Certainly the tenure act should not be interpreted to give teachers less rights than they have under the common law."

We quote from the brief for the American Civil Liberties Union and American Civil Liberties Union of Michigan, *Amici Curiae:*

"What happens in Elk Rapids will likewise affect conditions elsewhere so that in a very real sense the case involves 'the community of American schools.' The courts below appear to have treated the matter as a routine dispute under provisions of the Michigan tenure of teachers act. Whatever may be the scope of protection granted by that legislation to probationary teachers, that question is not within the concern of the ACLU in this brief. Assuming that appellant had no rights whatever under such statute, 'the ultimate boundaries' of his rights as a citizen are set, not by the tenure act, 'but by the Constitution of the United States.'"

Plaintiff asks this Court "to reverse the decision of the Court of Appeals; order the Elk Rapids Schools to forthwith re-employ plaintiff; direct the circuit court to ascertain and assess against defendants any monetary damage which the plaintiff has incurred as the result of defendant's unlawful conduct; and award costs to plaintiff-appellant in all courts."

## *CONCLUSION:*

We have examined the numerous Federal cases cited by plaintiff and by *Amici Curiae* and find none that would justify the conclusion that the Michigan teachers' tenure act violates either the United States or the Michigan Constitutions.

In the appeal of petitioner-appellant *Zimmerman* v. *Board of Education of the City of Newark* (1962), 38 NJ 65 (183 A2d 25), *cert den* (1963), 371 US 956 (83 S Ct 508, 9 L Ed 2d 502), the Supreme Court of New Jersey considered a proceeding on a probationary teacher's appeal from the Commissioner

of Education's refusal to order his reinstatement in a teaching position following dismissal upon his invocation of privilege against self-incrimination before congressional committee.

In affirming the decision of the Board of Education and holding that petitioner-appellant was not entitled to tenure status, the New Jersey Supreme Court stated (pp 71–73, 75):

"In New Jersey, as well as elsewhere, today legislatures have provided that teachers may, by satisfying certain conditions, acquire permanent tenure so as to be subject to dismissal only for cause and in the manner provided by law. Such statutes changed the unlimited common-law right of boards of education to contract with teachers. In principle, civil service benefits and protection were accorded teachers by the legislatures. The objectives are to protect competent and qualified teachers in the security of their positions during good behavior, and to protect them, after they have undergone an adequate probationary period, against removal for unfounded, flimsy, or political reasons.

\* \* \*

"As we have already emphasized, teacher tenure is a statutory right imposed upon a teacher's contractual employment status. In order to acquire the status of a permanent teacher under a tenure law and with it the consequent security of permanent employment, a teacher must comply with the precise conditions articulated in the statute. \* \* \*

"In our state tenure status may be secured by a teacher only after employment for the probationary periods specified in N.J.S.A. 18:13–16 \* \* \*

"Once a teacher acquires tenure status, he cannot be dismissed 'except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause' and certain procedural prerequisites are required. \* \* \*

"Inherent in the tenure legislation is the policy that a board's duty to hire teachers requires more

than merely appointing licensed instructors; it demands that permanent appointments be made only if the teachers are found suitable for the positions after a qualifying trial period. In essence this constitutes a 'proving out' period. In another context, we said in *Cammarata* v. *Essex County Park Commission* (1958), 26 NJ 404, 412 (140 A2d 397):

" 'It is difficult to evaluate the character, industry, personality, and responsibility of an applicant from his performance on a written examination or through cursory personal interviews. Knowledge and intelligence do not alone [suffice] * * * . The crucial test of his fitness is how he fares on the job from day to day when suddenly confronted by situations demanding a breadth of resources and diplomacy. Many intangible qualities must be taken into account, and, since the lack of them may not constitute good cause for dismissal under a tenure statute, the [employer] * * * is entitled to a period of preliminary scrutiny, during which the protection of tenure does not apply, in order that it may make pragmatically informed and unrestricted decisions as to an applicant's suitability.'

"The same thoughtful philosophy applies with manifold emphasis to the election of schoolteachers. * * *

"Except for statutory conditions, a teacher is retained solely on a contract basis during his probationary employment. At the expiration of an annual contract period, the employment relationship ceases to exist unless a new contract has been entered into. While some states provide for automatic re-employment or renewal of contract unless contrary notice is given, our statute does not so specify. And except to the extent of constitutional or statutory limitations, there is no legal duty on the part of a board to re-employ a teacher at the end of a contract term. *Brooks* v. *School District of City of Moberly, Missouri* (CA8, 1959), 267 F2d 733, 739, *cert den* 361 US 894 (80 S Ct 196, 4 L Ed 2d 151); *Rees* v. *Murray City Board of Education* (1957), 6 Utah 2d 196 (310

P2d 387, 388) ; *Bourne* v. *Board of Education of City of Roswell* (1942), 46 NM 310 (128 P2d 733) ; *Knickerbocker* v. *Redlands High School Dist.* (1942), 49 Cal App 2d 722, (122 P2d 289, 291) ; *Chase* v. *Mason* (1926), 216 App Div 562 (216 NYS 205), *aff'd* 244 NY 545, 155 NE 890.

"Accordingly, unless Zimmerman by an affirmative act of the board was re-employed subsequent to June 30, 1955, he cannot be said to have been employed for three consecutive academic years 'together with employment at the beginning of the next succeeding academic year.' N.J.S.A. 18 :13–16. This statutory step had to take place, for, 'it is axiomatic that the right of tenure does not come into being until the precise condition laid down in the statute has been met.' *Ahrensfield* v. *State Board of Education* (1941), 126 NJL 543 (19 A2d 656), at p 544.

"We hold that Zimmerman is not entitled to tenure status upon this ground."

In *Parker* v. *Board of Education of Prince George's County, Maryland* (CA4, 1965), 348 F2d 464, *cert den* 382 US 1030 (86 S Ct 653, 15 L Ed 2d 543), *reh den* 383 US 939 (86 S Ct 1071, 15 L Ed 2d 857), the Court held (p 465) :

"His employment as a teacher under a contract with the Board of Education of Prince George's County, Maryland was arbitrarily and illegally terminated, Ray Elbert Parker charged in his complaint, praying the District Court to order his reinstatement and award him damages. From an adverse summary judgment he appeals. We affirm upon the third defense pleaded in the Board's answer, *viz.*, the failure of the complaint to state a claim upon which relief could be granted. Fed Rules Civ Proc 12(b)(6).

"We need not pass on the merits of the Fifth, Fourteenth and First Amendment deprivations and abridgement asserted by the appellant, consisting of the board's termination of his employment (1.) with-

out a hearing and (2.) because of his instruction from a book which he said had been proscribed by the board in violation of freedom of speech. Our decision rests entirely on the contract. By its terms Parker was only employed provisionally and wholly without academic tenure, express or implied. The agreement was that his engagement was simply probationary and 'that either of the parties to this contract may terminate it at the end of the first or second school year by giving 30 days' notice in writing to the other during the month of June or July.' Concededly, the termination complied with this stipulation. We join the District Judge in upholding the board's action on this ground. *Parker* v. *Board of Education* (D Md, 1965), 237 F Supp 222."

Parker tried again, this time naming the State of Maryland and others as defendants, and seeking to have the statute providing for probationary or non-tenure teachers declared unconstitutional. He lost again, in similar fashion. *Parker* v. *State of Maryland* (CA 4, 1967), 384 F2d 873.

The record in the instant case does not contain any allegation or recitation of fact even implying that the board was guilty of racial, religious, political, or any other form of improper action or discrimination. But, to the contrary, plaintiff states:

"Defendant Board of Education feels it has fully met its statutory obligation regarding Mr. Munro by simply informing him that he would not be rehired."

Plaintiff's prayer that we "reverse the decision of the Court of Appeals; order the Elk Rapids Schools to forthwith re-employ plaintiff; direct the circuit court to ascertain and assess against defendants any monetary damage which the plaintiff has incurred as the result of defendant's unlawful conduct; and award costs to plaintiff-appellant in all courts" is

denied and the decision of the Court of Appeals is affirmed. No costs, a public question being involved.

T. E. BRENNAN, C. J., and DETHMERS and BLACK, JJ., concurred with KELLY, J.

## APPENDIX

### TEACHERS' TENURE ACT

*PA 1937 (Ex Sess), No 4, as amended*

#### TITLE

"An act relative to continuing tenure of office of certificated teachers in public educational institutions; to provide for probationary periods; to regulate discharges or demotions; to provide for resignations and leaves of absence; to create a state tenure commission and to prescribe the powers and duties thereof; and to prescribe penalties for violation of the provisions of this act." [As amended by PA 1964, No 2.]

#### "ARTICLE II. PROBATIONARY PERIOD

"§ 1. All teachers during the first two school years of employment shall be deemed to be in a period of probation: Provided, That any teacher under contract at the time this act becomes effective who has previously rendered two or more years of service in the same school district shall be granted continuing tenure immediately upon reappointment by the controlling board: Any such controlling board by unanimous vote of its members, however, may refuse to appoint a teacher who has rendered two or more years service in the school district under its control. In the event the vote against reappointment of such teacher is not unanimous the controlling board shall deem such teacher as on continuing tenure with full right to hearing and appeal as provided in article 4 and article 6 of this act: Provided further, That

the controlling board, after this act becomes effective, may place on continuing tenure any teacher who has previously rendered two or more years of service.

"§ 2. No teacher shall be required to serve more than one probationary period in any one school district or institution: Provided, That a third year of probation may be granted by the controlling board upon notice to the tenure commission.

"§ 3. At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued. [As amended by PA 1967, No 216.]

"§ 4. Articles 4, 5 and 6 shall not apply to any teacher deemed to be in a period of probation. [Added by PA 1963, No 242, eff Sept 6, 1963.]

## "ARTICLE III. CONTINUING TENURE

"§ 1. After the satisfactory completion of the probationary period, a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act." [The remaining part of this section is not helpful or applicable to the instant appeal.]

"§ 2. If a teacher on continuing tenure is employed by another controlling board, he shall not be subject to another probationary period of more than one year beginning with the date of employment, and may at the option of the controlling board be placed immediately on continuing tenure. Any notice provided under § 3 of article 2 shall be given

at least 60 days before the completion of the year of probation.  If a teacher on continuing tenure becomes an employee of another controlling board as a result of school district annexation, consolidation or other form of school district reorganization, he shall be placed on continuing tenure within 30 days unless the controlling board, by a 2/3 vote on an individual basis, places the teacher on not more than one year probation.  [As amended by PA 1967, No 216.]

## "ARTICLE IV.  DISCHARGE, DEMOTION OR RETIREMENT

"§ 1. Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause, and only after such charges, notice, hearing, and determination thereof, as are hereinafter provided.  Nothing in this act shall be construed as preventing any controlling board from establishing a reasonable policy for retirement to apply equally to all teachers who are eligible for retirement under Act No 136 of the Public Acts of 1945 or having established a reasonable retirement age policy, from temporarily continuing on criteria equally applied to all teachers the contract on a year-to-year basis of any teacher whom the controlling board might wish to retain beyond the established retirement age for the benefit of the school system.  [As amended by PA 1966, No 15.]

"§ 2. All charges against a teacher shall be made in writing, signed by the person making the same, and filed with the secretary, clerk or other designated officer of the controlling board.  Charges concerning the character of professional services shall be filed at least 60 days before the close of the school year.  The controlling board, if it decides to proceed upon such charges, shall furnish the teacher with a written statement of the charges including a statement of the teacher's rights under this article, and shall, at the option of the teacher, provide for a hearing to take place not less than 30 nor more than

45 days after the filing of such charges. [As amended by PA 1967, No 216.]

"§ 3. On the filing of charges in accordance with this section, the controlling board may suspend the accused teacher from active performance of duty until a decision is rendered by the controlling board, but the teacher's salary shall continue during such suspension: Provided, That if the decision of the controlling board is appealed and the tenure commission reverses the decision of the controlling board, the teacher shall be entitled to all salary lost as a result of such suspension.

"§ 4. The hearing shall be conducted in accordance with the following provisions:

"a. The hearing shall be public or private at the option of the teacher affected.

"b. No action shall be taken resulting in the demotion or dismissal of a teacher except by a majority vote of the members of the controlling board.

"c. Both the teacher and the person filing charges may be represented by counsel.

"d. Testimony at hearings shall be on oath or affirmation.

"e. The controlling board shall employ a stenographer who shall make a full record of the proceedings of such hearing and who shall, within ten days after the conclusion thereof, furnish the controlling board and the teacher affected thereby with a copy of the transcript of such record, which shall be certified to be complete and correct.

"f. Any hearing held for the dismissal or demotion of a teacher, as provided in this act, must be concluded by a decision in writing, within 15 days after the termination of the hearing. A copy of such decision shall be furnished the teacher affected within five days after the decision is rendered.

"g. The controlling board shall have the power to subpoena witnesses and documentary evidence, and shall do so on its own motion or at the request of the teacher against whom charges have been made. If any person shall refuse to appear and

testify in answer to any subpoena issued by the controlling board, such controlling board may petition the circuit court of the county setting forth the facts which court shall thereupon issue its subpoena commanding such person to appear before the controlling board there to testify as to the matters being inquired into. Any failure to obey such order of the court may be punished by such court as contempt thereof.

"§ 5. Any teacher on permanent tenure whose services are terminated because of a necessary reduction in personnel shall be appointed to the first vacancy in the school district for which he is certified and qualified."

### "ARTICLE VI.  RIGHT TO APPEAL

"§ 1. A teacher who has achieved tenure status may appeal any decision of a controlling board under this act within 30 days from the date of such decision, to a state tenure commission. The state tenure commission shall provide for a hearing to be held within 60 days from the date of appeal. Notice and conduct of such hearing shall be the same as provided in article 4, § 4 of this act, and in such other rules and regulations as the tenure commission may adopt."   [As amended by PA 1963, No 242.]

### "ARTICLE VII. STATE TENURE COMMISSION

"§ 1. There is hereby created a state tenure commission of five members: two of whom shall be classroom instructors, one a member of a board of education of a graded or city school district, one a person not a member of a board of education or a teacher, and one a superintendent of schools. The superintendent of public instruction shall be *ex officio* secretary of the commission, and the attorney general shall assign to the commission an assistant who shall be legal advisor to the commission. [As amended by PA 1963, No 242.]

"§ 9. The tenure commission shall act as a board of review for all cases appealed from the decision of a controlling board. All records shall be kept in

the office of the Superintendent of Public Instruction." [As amended by PA 1963, No 242.]

T. G. Kavanagh, J. (*dissenting*). Plaintiff sought mandamus to compel defendant to accord him the status of tenure and to employ him as a tenure teacher.[1] The matter is here on appeal from the decision of the Court of Appeals affirming the summary judgment of the trial court denying the relief requested.

The plaintiff teacher was employed as a probationary teacher by the defendant board, had served two years without written notice that his work was unsatisfactory, and then was notified he would not be employed for the ensuing year.

Defendant concedes that for the purpose of determining the questions involved here, the plaintiff's work must be deemed satisfactory during the probationary period.

This case, if not controlled by the letter, is certainly controlled by the spirit of *Wilson* v. *Flint Board of Education* (1960), 361 Mich 691. In *Wilson* the defendant board had "adopted a policy of requiring three years probation for all new teachers in the Flint school system" (at 694) and had not furnished the plaintiff teacher with written notification as to the quality of her work, whether it was satisfactory or otherwise. We held that while the board *might* grant a third year of probation for the benefit of the teacher, it could not *require* it, and that the failure to give written notice as to whether or not the work was satisfactory during the statutorily provided two-year probationary period was conclusive evidence that the work was satisfactory.

"The result of the above" we said, "is that the teacher *has satisfactorily completed the probation-*

---

[1] According to the provisions of the Michigan teachers' tenure act (MCLA § 38.71 *et seq.* [Stat Ann 1968 Rev § 15.1971 *et seq.*]).

*ary period, is entitled to the status of tenure,* and may not be dismissed save for reasonable and just cause, and then only in compliance with the provisions of the act." (At 696.) (Emphasis added.)

Under the clear intendment of *Wilson* the plaintiff here is entitled to the status of tenure.

The school board argues that the last sentence of Art II, § 3[2] "Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified at least 60 days before the close of the school year that his services will be discontinued" permits a local board to terminate the services of a satisfactory teacher as well as an unsatisfactory teacher.

The notice of discontinuance is not related to satisfactory or unsatisfactory work they argue, and hence the board's decision to dismiss the probationary teacher can be as capricious as may please the board.[3]

The purpose of the teachers' tenure act was spelled out in *Rehberg* v. *Board of Education of Melvindale, Ecorse Township School District No. 11, Wayne County* (1951), 330 Mich 541, and the cases cited therein, as well as in *Wilson, supra.*

The whole thrust of the act is to *limit* the local boards' power in its employment of teachers. "Its purpose is to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference." *Ehret* v. *Kulpmont Borough School District* (1939), 333 Pa 518 (5 A2d 188) cited in *Rehberg, supra,* at 545.

---

[2] MCLA § 38.83 (Stat Ann 1968 Rev § 15.1983).

[3] The board here did not permit employment of the plaintiff teacher beyond the two year probationary period, hence had not accorded him such tenure as would entitle him to appeal to the tenure commission. This suit is for mandamus compelling the board to do so. The "refusal to employ" is thus distinguished from a dismissal, and under the circumstances of this case, is properly one for the court's decision.

"It promotes good order and the welfare of the state and the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders." *State, ex rel. Anderson,* v. *Brand* (1938), 214 Ind 347 (5 NE2d 531, 110 ALR 778), cited in *Rehberg, supra,* at 545.

"In *State, ex rel. Wood,* v. *Board of Education of City of St. Louis* (1947), 357 Mo 147 (206 SW2d 566, 567) it is stated that the purpose of the act is to protect and improve state education by retaining in their positions teachers who are qualified and capable, and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause." *Rehberg, supra,* at 545.

In *Wilson, supra,* noting that the tenure act was intended to reduce turnover in the teachers' profession, we quoted the following comment in 37 Mich L Rev 430–432 (1939):

"The large turnover in the profession was due in part to certain practices which were widespread throughout the country; among them may be noted discharge (1) because of political reasons, (2) because of nonresidence in the community, (3) in order to make places for friends and relatives of board members or influential citizens, (4) in order to break down resistance to reactionary school policies, and (5) in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees. Of these practices the first was exceedingly influential in the growth of the tenure movement, some of the more notorious cases of political dismissal challenging the attention of the public to the injury to professional morale and efficiency resulting from the misuse of the control vested in the administrative agencies. The remedy for such abuses was sought in legislation designed to strip the school boards of their autocratic power

and to prescribe for them rules of administrative action which would ensure a greater degree of security to their employees."

The interpretation of the act which the school board here advocates is contrary to the spirit and letter of the law.

The above cases, cited for the policies underlying the act, admittedly apply to the tenure period but their spirit pervades the probationary period as well.

We are not saying that the board lacks any discretion to retain or not to retain a probationary teacher. The probationary period is just that—a period of proof. We are saying that the intent of the *entire* act was to eliminate capricious and arbitrary employment policies of local school boards. This includes the probationary as well as the tenure period of employment.

The act was not myopically drafted. It recognized both the need for a trial period and its concomitant danger—the potential abuse by the board of their discretion.

The act spells out that probation is a period of trial. Its satisfactory completion requires that a teacher who completes his probation must be hired. At this point the board's discretion has been removed, and thereafter, cause must be shown for a teacher's removal.

There is good reason for this. It prevents using satisfactory reports to lull teachers into two-year stays (at lower salaries) when there is a known likelihood that they will not be retained.

Such a system allows the teacher no chance at self-improvement or self-correction. He has no notice of his failure to measure up to the standards of the board. If he does not accidentally change—

for the lack of any reported deficiency gives him no direction—he will be discharged. Discharge (or failure to rehire) is a blemish that can permanently scar his record and effectively limit any chance he has to be rehired as a teacher in this state. Since there is little or no reciprocity for teachers between states, such damage to his teaching credentials in his chosen profession may indeed destroy his career. Therefore it is incumbent on the boards to follow both the letter and spirit of the law.

All parts of an act should be read together to harmonize the meaning and give effect to the act as a whole.

Art II of the act provides for a probationary period and all of the other Articles deal with teachers who satisfactorily completed that period and achieved the status of "continuing tenure."

Art III, § 1[4] provides in part that "after the *satisfactory* completion of the probationary period a teacher *shall* be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act." (Emphasis added.)

The only fair reading of this section is that upon "satisfactory completion of the probationary period" the teacher is entitled to be given tenure by that board.

"Shall be employed by the controlling board" takes it out of the board's hands to decide whether or not to accord tenure.[5]

---

[4] MCLA § 38.91 (Stat Ann 1968 Rev § 15.1991).—REPORTER.

[5] It is worth repeating that this does *not* mean that a teacher can *never* be discharged. It means that if a teacher is not given *any* notice that his work is unsatisfactory and he completes the probationary period then he is entitled to be shown cause before he can be released from employment.

Even if we disagree with the wisdom of such regulation of teachers' employment, the legislature by this act has given them an enforceable legal right. Mandamus should issue as prayed.

T. M. KAVANAGH and ADAMS, JJ., concurred with T. G. KAVANAGH, J.