SIMMONS v MARLETTE BOARD OF EDUCATION

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS' TENURE—NOTICE—
   STATUTES—DETAILS.
   A statute mandates that a probationary teacher or one employed
   on a noncontinuing contract must be informed at least 60 days
   before the close of the school year that he or she will not be
   rehired for the following school year; notice is required to be
   given in a definite written statement, but that statement need
   not set forth the specific and detailed areas in which the
   teacher's services were unsatisfactory (MCLA 38.83; MSA
   15.1983).

2. STATUTES—CONSTRUCTION—HARMONIOUS WHOLE—AMBIGUITIES—
   OTHER SECTIONS.
   A statute must be read as a whole with the meaning given to one
   section being arrived at after due consideration of other sec-
   tions, so as to produce a harmonious and consistent enactment
   as a whole; where one section is ambiguously worded, legisla-
   tive intent may be found by clear and express language found
   in other sections.

3. JUDGMENT—FOOTNOTES—LIMITATION OF SCOPE.
   Footnotes are recognized instruments by which the scope of a
   court's ruling is restricted.

4. SCHOOLS AND SCHOOL DISTRICTS—ARBITRARINESS—PROBATIONARY
   TEACHERS—DISMISSAL—ACTION.
   A school board may not act unreasonably or arbitrarily in dis-
   missing a probationary teacher; arbitrary and capricious behav-
   ior may be challenged by an action in circuit court.

Appeal from Sanilac, Arthur M. Bach, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 68 Am Jur 2d, Schools §§ 152, 153, 169.
  Teachers' tenure statutes. 127 ALR 1298.
[2] 73 Am Jur 2d, Statutes § 254.
[3] 20 Am Jur 2d, Courts § 189.

mitted June 4, 1976, at Lansing. (Docket No. 25460.) Decided December 10, 1976.

Complaint by Sharon Simmons against the Board of Education of Marlette Community Schools and Marlette Community Schools for mandamus and reinstatement of plaintiff as a teacher in the defendants' school system. Judgment for plaintiff. Defendants appeal. Reversed and remanded.

*Foster, Swift & Collins, P. C.,* for plaintiff.

*Thrun, Maatsch & Nordberg,* for defendants.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

ALLEN, P. J. Does Article II, § 3 of the Michigan teacher tenure act (MCLA 38.83; MSA 15.1983) require a board of education, when terminating a probationary teacher's services, to set forth within the required definite written statement specific and detailed areas in which the teacher's services were unsatisfactory? This question of first impression[1] and of considerable importance to school authorities comes to us on the following facts.

Plaintiff was a first-year probationary teacher hired by defendants for the school year 1973–74. At least once in February and again in March

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The same issue is now pending before the Supreme Court in an appeal from *Lipka v Brown City Schools,* 59 Mich App 175; 229 NW2d 362 (1975). The issue was not reached by the Court of Appeals. The same issue, but on somewhat different facts, was raised and discussed in *Anderson v Board of Education of the School District and City of Adrian,* 73 Mich App 33; 250 NW2d 786 (1977). *See also Amato v Oxford Area Community School District #7,* 70 Mich App 305; 245 NW2d 728 (1976).

1974, defendant's principal visited plaintiff's classroom and evaluated plaintiff's teaching performance. At a public meeting April 3, 1974, defendant board of education adopted the following resolution:

"Motion by James Boine, seconded by William Stempel that the board terminate Sharon Simmons' services as a teacher effective June 10, 1974, because her services were unsatisfactory especially in areas of classroom control and organization."

Plaintiff was then notified by the superintendent of the board's action by a letter dated April 5, 1974, reading as follows:[2]

"You are hereby officially notified that the board of education will not renew your contract for the 1974-75 school year and your services as a teacher in Marlette Community School are terminated effective June 10, 1974. Said action was taken by the board at its meeting held Wednesday, April 3, 1974, because your professional services as a teacher were judged to be unsatisfactory, especially in the areas of classroom control and classroom organization."

Plaintiff admits to having received the letter and has not denied that it was received more than 60 days before the close of the school year. Plaintiff made no demand on defendants for a clarification of the reasons given in the notice[3] but, in July 1974, filed a three-count complaint in circuit court. Count II of the complaint alleges that the notice

[2] Board action had been taken March 27, 1974, followed by letter to plaintiff dated March 29, 1974, but because notice to plaintiff was technically deficient, subsequent board action and letter to plaintiff was taken as indicated above.

[3] A request for a clarification would, in most instances, probably be granted. We note and reserve for a future case the possibility that boards of education might be required to provide a more detailed explanation if a probationary teacher requests a clarification.

given in the letter April 5, 1974, was not sufficiently definite as required by article II, § 3 of the teacher tenure act; MCLA 38.83; MSA 15.1983. Count II also alleged that the notice was further defective in that the letter was not expressly authorized by the defendant board and the board did not specifically direct the superintendent to notify plaintiff of the board's action. Plaintiff then moved for partial summary judgment on Count II of the complaint. Upon conclusion of oral arguments, the trial court issued an oral opinion from the bench stating that the reasons for termination of plaintiff's employment as given in the notice of April 5, 1974 were, as a matter of law, not sufficiently definite as required by article II, § 3 of the teacher tenure act. An order incorporating the oral opinion was entered June 26, 1975, and an amended order to the same effect was entered August 18, 1975. It is from the August 18, 1975 order that defendants appeal.[4]

Article II, § 3 of the teacher tenure statute reads:

"Sec. 3. At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a *definite written statement* as to whether or not his work has been satisfactory: Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified at least 60 days before the close of the school year that his services will be discontinued." (Emphasis added.)

---

[4] The court did not rule on the allegations in Count II that the notice was further defective because it was not expressly authorized and the board did not direct the superintendent to send the notice. These issues were not briefed and consequently are not discussed in our opinion.

Defendants argue that a simple timely notification in writing that the teacher's work is unsatisfactory is all that the statute requires. Clearly, defendants say, if the Legislature intended the word "definite" to require specific reasons for unsatisfactory work to be included within the written notice, the Legislature would have so stated. Plaintiff argues that the teacher tenure statute must be construed strictly against the board of education and in favor of protecting teachers' rights. *Weckerly v Mona Shores Board of Education,* 388 Mich 731, 734; 202 NW2d 777 (1972). Without specificity of reasons, says plaintiff, "the public school teachers of Michigan are right back where they started prior to the tenure act and the numerous judicial interpretations guaranteeing teachers security and protections". For the reasons set forth below we hold in favor of defendants.

Article II, § 3 is hardly a model of legislative draftsmanship. Yet, when it is read literally it appears to state, albeit in an awkward way, that there must be a written statement which definitely states whether the teacher's work was satisfactory. It does not appear to go further and require a detailing or listing of reasons why the work was unsatisfactory. Where one section of a statute is ambiguously worded, legislative intent may be found by clear and express language found in other sections. *Bidwell v Whitaker,* 1 Mich 469 (1850). In interpreting a statute we must read the entire act as a whole, and the meaning to be given to one section should be arrived at after due consideration of other sections, so as to produce a harmonious and consistent enactment as a whole. *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420; 102 NW2d 584 (1960). Applying this rule of construction to the instant case, we note

that article II of the tenure statute deals with the discharge of probationary teachers while article IV deals with the discharge of tenured teachers. Sections 1 and 2 of article IV require specific reasons to be included in the notice when discharge of a tenured teacher is contemplated.[5] If the Legislature had intended to require this same detailing of charges against a probationary teacher it easily could have done so. The fact that the Legislature chose not to do so indicates to us that the Legislature did not intend that a notice to probationary teachers should include detail of why and in what manner the teacher's work was unsatisfactory.

While no case has squarely addressed this issue, a number of cases have discussed other duties of the employer school board where a probationary teacher is not retained. The landmark case—actually a trinity of cases[6]—is *Munro v Elk Rapids Schools.* There, plaintiff had been employed as a probationary teacher for two school years. In November and January of the second year, plaintiff was evaluated as to teaching ability and rated satisfactory. Nevertheless, in February plaintiff received a letter stating:

"I regret to inform you that on February 12, 1968, the Elk Rapids School Board directed me to notify you that you would not be offered a contract for the 1968–69 school year."

---

[5] "Sec. 1. Discharge or demotion of a teacher on continuing tenure may be made only *for reasonable and just cause, and only after such charges, notice,* hearing, and determination thereof, *as are hereinafter provided."* (Emphasis supplied.) (MCLA 38.101; MSA 15.2001.)

"Sec. 2. All charges against a teacher shall be made in writing, signed by the person making the same, and filed with the secretary, clerk or other designated officer of the controlling board." (MCLA 38.102; MSA 15.2002.)

[6] 17 Mich App 368; 169 NW2d 527 (1969); *aff'd* 383 Mich 661; 178 NW2d 450 (1970); *rev'd on rehearing* 385 Mich 618; 189 NW2d 224 (1971).

At the Court of Appeals level, defendant admitted that plaintiff's work was satisfactory but claimed that a "satisfactory" rating does not automatically guarantee continued employment. In a brief opinion the Court of Appeals adopted defendant's interpretation. The case then went to the Supreme Court which, in a 4–3 decision, affirmed. The dissenting opinion written by Justice (now Chief Justice) T. G. KAVANAGH stated that the case was controlled by the spirit, if not the letter, of *Wilson v Flint Board of Education*[7]—a case where the plaintiff teacher was not furnished written notification as to whether her work was satisfactory and where the Court held that the absence of such mandated written notice precluded the defendant board from discontinuing her employment. The dissenting opinion in *Munro v Elk Rapids Schools*, 383 Mich 661; 178 NW2d 450 (1970), then went on to review the history of the tenure statute and concluded that it was necessary for the school board to follow the letter of the law, *viz.*—the requirement that written notice be given the teacher that his work was unsatisfactory. Footnote five of the dissenting opinion explicitly states:

"[5]It is worth repeating that this does not mean that a teacher can never be discharged. *It means that if a teacher is not given any notice that his work is unsatisfactory* and he completes the probationary period then *he is entitled to be shown cause before he can be released* from employment." (Emphasis supplied.)

One year later *Munro* was reargued before the Supreme Court which, in a per curiam opinion, adopted the KAVANAGH dissent stating:

"For the reasons set forth in the minority opinion

---

[7] 361 Mich 691; 106 NW2d 136 (1960).

heretofore filed herein and reported at 383 Mich 661, beginning at 688, which is hereby adopted as the opinion of this Court, we hold that under the statute, *unless a probationary teacher is notified in writing that his work is unsatisfactory, upon completion of his probationary period he is entitled to employment with tenure status with all of its specified rights and privileges.*" 385 Mich 618, 619–620. (Emphasis supplied.)

The salient point for us is that both *Munro* and *Wilson* involved cases where no written notice was given at all and where the issue involved was not whether a detailed statement of the reasons for the unsatisfactory work were mandated by statute but whether a school board could under certain circumstances discharge a probationary teacher even if the teacher's work was good. To us *Munro* indicates that a simple, timely written notification that the teacher's work is unsatisfactory is compliance with the statute. The next relevant case was *Weckerly v Mona Shores Board of Education,* 388 Mich 731; 202 NW2d 777 (1972). In that case the narrow issue was at what point in time the prescribed written statement of unsatisfactory work must be provided. Nevertheless the Court referred to its *Munro* and *Wilson* decisions stating:

"We have held that if no written statement is provided, the statute requires it ' "shall be considered as conclusive evidence" that the [teacher's] work is satisfactory'. We have also held that if the written statement that a contract would not be renewed fails to state whether or not the teacher's work had been satisfactory, the written statement does not meet statutory requirements." 388 Mich at 734.

Again this statement indicates that a simple,

timely written notification that the teacher's work is unsatisfactory is compliance with the statute.

In *Blurton v Bloomfield Hills Board of Education,* 60 Mich App 741; 231 NW2d 535 (1975), this Court was called upon to interpret the phrase "for a full school year" contained in article I, § 1 of the tenure statute.[8] Plaintiff's written contract had prorated the school year and a literal interpretation of the phrase "a full school year" would make it unnecessary for the defendant school board to give a 60-day notice mandated by article II, § 3. Our Court found in plaintiff's favor, stating:

"The statute mandates that a probationary teacher or one employed on a noncontinuing contract must be informed that her work is or is not satisfactory and that she will not be rehired for the following school year at least 60 days before the close of the school year.[5] *Weckerly v Mona Shores Board of Education,* 388 Mich 731; 202 NW2d 777 (1972)."

Footnote 5 reads as follows:

"We are not holding that the notice must give reasons why the teacher's performance is unsatisfactory or satisfactory, we are merely holding that the performance rating must be contained in the notice." 60 Mich App at 745.

Footnotes are recognized instruments by which the scope of a court's ruling is restricted. Leflar, *Appellate Judicial Opinions,* p 175. Footnote 5, combined with the preceding cases, clearly indicates to us that it is unnecessary to include in the statu-

[8] "Sec. 1. The term 'teacher' as used in this act shall include all certificated persons employed *for a full school year* by any board of education or controlling board of any public educational institution."

tory notice reasons why the probationary teacher's performance is unsatisfactory.[9]

Finally, we respond to the claim that unless this Court requires specificity in article II, § 3 notices, probationary teachers will be right back where they started prior to the tenure act and *Munro* decision. We totally disagree. As we have noted earlier, even after enactment of the tenure statute, school authorities took the position that a probationary teacher with a satisfactory performance rating could be discharged without the prescribed 60-day notice. That was the school board's position in the first *Munro* case—a position sustained by this Court. The position was then rejected in the final *Munro* case when the Supreme Court held that where no written notice of an unsatisfactory rating had been given at all, a probationary teacher was wrongfully denied employment. Nothing in our decision today negates that holding, much less turns back the clock to pre-*Munro* days.[10] To the contrary, we affirm the *Munro* decision. However, we do not grant plaintiff's request that we enlarge and expand the protection afforded probationary teachers by wiring into the statute, by judicial interpretation, requirements

---

[9] An additional case supporting our conclusion is *Morse v Wozniak*, 398 F Supp 597 (ED Mich, 1975), where plaintiff received notice he would not be reemployed but received no written notice that his work was unsatisfactory. Citing *Munro* and *Weckerly, supra,* the court held in plaintiff's favor.

[10] Plaintiff contends that unless the reasons for dissatisfaction with the teacher's performance are spelled out the teacher is denied the right to know what his deficiency is and is thus deprived of the opportunity to correct the deficiency. However, arbitrary and capricious behavior can still be challenged in circuit court. *See Caddell v Ecorse Board of Education,* 17 Mich App 632, 635; 170 NW2d 277 (1969), which held that even though the tenure act did not specifically provide for review of a decision to dismiss a probationary teacher, the board could not act unreasonably or arbitrarily. Furthermore, the written notice to plaintiff in the instant case did list areas in which performance was found unsatisfactory.

greater than the Legislature intended. That is the province of the Legislature.

Reversed and remanded; no costs, a public question being involved.