WILSON v. FLINT BOARD OF EDUCATION.

1. STATUTES—CONSTRUCTION.

A statute enacted to reduce the large turnover in the teaching profession is interpreted against the background of the evils sought to be cured thereby.

2. SCHOOLS AND SCHOOL DISTRICTS — TEACHERS — PROBATIONARY PERIOD.

The board of education of a school district may not require of a teacher a probationary period of more than 2 years but, for the benefit of a teacher, may grant a third year of probation (CL 1948, § 38.71 *et seq.*).

3. SAME—TEACHERS—PROBATIONARY STATUS—STATEMENT.

A public school teacher who is on probationary status and not given a written statement before the close of either the first or second school years as to whether or not her work was satisfactory is accorded a conclusive statutory presumption that the work is satisfactory (CL 1948, § 38.71 *et seq.*).

4. SAME—TEACHERS—PROBATIONARY PERIOD—TENURE STATUS.

A public school teacher, who has satisfactorily completed the probationary period, is entitled to the status of tenure, and may not be dismissed save for reasonable and just cause (CL 1948, § 38.71 *et seq.*).

5. SAME—TEACHERS—TENURE STATUS.

A public school teacher who has acquired tenure status is entitled to a proper hearing by the board of education of a school district on the merits after specific charges shall have been furnished the teacher, all in accordance with provisions of the teachers' tenure act (CL 1948, § 38.71 *et seq.*).

REFERENCES FOR POINTS IN HEADNOTES

[1]  47 Am Jur, Schools § 129.
      Teachers' tenure statutes.  127 ALR 1298.
[2]  47 Am Jur, Schools § 130.
[3]  47 Am Jur, Schools § 133.
[4]  47 Am Jur, Schools § 139.
[5]  47 Am Jur, Schools § 140.

Appeal from State Tenure Commission. Submitted October 12, 1960. (Docket No. 66, Calendar No. 48,594.). Decided December 1, 1960.

Burnestyne Wilson sought review of action of the Board of Education of the City of Flint in terminating her services as teacher. Ordered remanded to school board for proper hearing on merits. Defendant appeals. Plaintiff cross-appeals. Attorney General intervenes. Affirmed.

*White & Newblatt* (*Charles W. White*, of counsel), for plaintiff.

*Bellairs & Dean* (*C. Rees Dean*, of counsel), for defendant.

*Paul L. Adams*, Attorney General, *Samuel J. Torina*, Solicitor General, *Eugene Krasicky* and *Gerald J. O'Reilly*, Assistant Attorneys General, for intervenor.

SMITH, J. This case involves an interpretation of legislation relative to teachers' tenure, PA 1937 (Ex Sess), No 4, as amended,* those provisions having particularly to do with probation.

The first section of article 2 of the act (entitled "probationary period") provides as follows:

"All teachers during the first 2 school years of employment shall be deemed to be in a period of probation."

The second section provides that:

"No teacher shall be required to serve more than 1 probationary period in any 1 school district or institution: Provided, That a third year of probation

---

* CL 1948, § 38.71 *et seq.* (Stat Ann 1959 Rev § 15.1971 *et seq.*).

may be granted by the controlling board upon notice to the tenure commission."

It is further provided (in the third section), with respect to claimed unsatisfactory service, as follows:

"At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory: Provided, That failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory, and: Provided further, That any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified at least 60 days before the close of the school year that his services will be discontinued."

The statute above referred to, from which pertinent excerpts were quoted, represents Michigan's participation in a national movement directed towards the reduction of the large turnover in the teaching profession. A study in the Michigan Law Review* describes the problem in these terms:

"The large turnover in the profession was due in part to certain practices which were widespread throughout the country; among them may be noted discharge (1) because of political reasons, (2) because of nonresidence in the community, (3) in order to make places for friends and relatives of board members or influential citizens, (4) in order to break down resistance to reactionary school policies, and (5) in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees. Of these practices the first was exceedingly influential in the growth of the tenure movement, some of the more notorious cases of political

---

* Comment, 37 Mich L Rev 430-432.

dismissal challenging the attention of the public to the injury to professional morale and efficiency resulting from the misuse of the control vested in the administrative agencies. The remedy for such abuses was sought in legislation designed to strip the school boards of their autocratic power and to prescribe for them rules of administrative action which would ensure a greater degree of security to their employees."

It is against this background of the evils sought to be cured by statutory enactment that we proceed to an interpretation thereof. The facts before us are not in dispute. On April 13, 1954, the board of education of the city of Flint (hereinafter referred to as the board) "adopted a policy requiring 3 years' probation for all new teachers in the Flint school system." Appellee was hired by the board as a probationary teacher and given a probationary contract for the "school year begining not earlier than Sept. 3, 1956, * * * and continuing until not later than June 14, 1957." No written statement as to the character of her work was furnished her at the conclusion of the school year. The same procedure was followed for a second year and, again, there was a failure to give her any written notification whatever as to the quality of her work, whether it was satisfactory or otherwise. Early in 1958 the appellee and all other second-year probationary teachers remaining under contract were placed upon a third-year probationary status by order of the board, and the State tenure commission so notified. Approximately 1 year later, on March 12, 1959, the superintendent informed the appellee that he "could not conscientiously recommend [her] for a tenure contract," and on March 24th she was notified of her discharge, effective June 12, 1959, at the end of the third year of the probationary period prescribed by the board. Hearing before the board having been

requested, such hearing was held upon June 3, 1959. The State tenure commission found as follows with respect to notice of, and hearing upon, the charges made against her:

"There may be a semblance of charges contained in a personnel record of evaluation which was used at the March 12th conference. We find the board erred in not giving her definite written charges and an opportunity to be fully heard. She did not have a full hearing, no stenographer was present, she did not have the opportunity to face the proponent of any charges."

Under date of June 17, 1959, she was notified of the board's adverse decision, and an appeal to the tenure commission was taken on July 15, 1959.* We here review the orders of the State tenure commission upon leave granted.

The basic problem facing us is the status of the appellee upon the date of the so-called discharge. We have made reference heretofore to the "policy" of the board to "require" 3 years of probation for a beginning teacher. But the State, also, has a policy as to beginning teachers, expressed in the teachers' tenure act. That policy is that the probationary period shall be not 3 years, but 2. "No teacher," says that statute, "shall be *required* to serve more than 1 probationary period," such period having been theretofore defined as of 2 years' duration. It is true that the board may "grant" a third year of probation to a teacher, but the language of a grant (as opposed to that of a requirement) makes clear that the third year is for the benefit of the teacher, who may not have satisfied the board fully but who may have shown promise nonetheless. Nowhere in such language is there any foundation for saying that a board

---

* The appeal was timely. CL 1948, § 38.121 (Stat Ann 1959 Rev § 15.2021).

may require, in all cases, 3 years of probation, and in so saying we need not adopt the State's suggestion that we have here simply a plan to benefit from a teacher's services for 3 years and then summarily to dismiss her.

Were appellee's services satisfactory during the probationary period provided by statute? There need be no extended discussion of this factor of the case. The policy of the State is not to leave a matter of such vital concern to all interested parties in the realm of debate. We have noted that the teacher was given no written statement before the close of either the first or the second school years as to whether or not her work was satisfactory. In this situation the statute is clear: such failure, it provides, "shall be considered as conclusive evidence" that the work is satisfactory.* The result of the above is that the teacher has satisfactorily completed the probationary period, is entitled to the status of tenure, and may not be dismissed save for reasonable and just cause, and then only in compliance with the provisions of the act.

The conclusions we have reached closely parallel those expressed in *La Shells* v. *Hench,* 98 Cal App 6, 12 (276 P 377, 379), where, in a similar situation involving year-to-year contracts the court held as follows:

"So far as the record shows, the board of trustees made no classification of teachers who had successfully taught for 2 years in the Tracy school, and who possessed otherwise the legal qualification to be classified as permanent teachers. This lack of the board to act, however, does not prevent the operation of the law in making such classification, and as the petitioner, under the law, was entitled to such classification, she must be so considered as classified, even though the board of trustees has failed to act,

---

* CL 1948, § 38.83 (Stat Ann 1959 Rev § 15.1983).

and at all times proceeded to enter into contracts purporting to limit the term of employment from year to year. To hold otherwise would be to decide that the provisions of the teachers' tenure act may be evaded by the expedient of using contracts reading for a yearly employment."

Under the view we have taken of the case it follows that the State tenure commission had jurisdiction of the matter and we need not pass upon its jurisdiction over probationers as such. We approve the commission's remand to the Flint school board. It will conduct a proper hearing on the merits after specific charges shall have been furnished the teacher, all in accordance with the provisions of the teachers' tenure act. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.