**Daniel K. MORSE, Plaintiff,**

v.

**Gerald WOZNIAK et al., Defendants.**

**Civ. A. No. 3170.**

United States District Court,
E. D. Michigan, N. D.

May 6, 1975.

Foster, Lindemer, Swift & Collins, Lynwood E. Beekman, Lansing, Mich., for plaintiff.

Sinas, Dramis, Brake, Turner, Boughton & McIntyre, Lester N. Turner, Lansing, Mich., for defendants.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 in which plaintiff claims violations of his constitutional rights due to the wrongful termination of his status as a school teacher in the Posen Consolidated School District No. 9. Both plaintiff and defendants have filed motions for summary judgments, raising in each essentially similar claims. The issues of fact relevant to decision of these claims are not in dispute.

Defendant School Board employed plaintiff as a probationary arts and crafts instructor during the 1968–69 and 1969–70 school years. The employment was on a year to year basis. At a meeting of the Board on March 12, 1970, it decided not to renew plaintiff's teaching contract for the 1970–71 school year. A letter dated March 16, 1970 was directed to him by the Superintendent of the defendant school district advising him as follows:

> "At a special meeting of the Board of Education of March 12, 1970, your name was presented as being eligible for a tenure contract starting next year. I am sorry we have to inform you that upon recommendation of the Tenure Committee, The Board voted unanimously to deny you tenure.

> "Your position with the Posen Consolidated School District #9 will cease at the end of this school year."

This letter was the only correspondence directed to the plaintiff by either the board or a representative of the board in connection with the decision not to renew his teaching contract; a decision which was made without a prior hearing, without notice or specification of charges, without the presentation of evidence against plaintiff, and without giving the plaintiff the opportunity to present evidence in his own behalf or to cross-examine witnesses against him.

Shortly after this case was filed, defendants presented a motion for summary judgment to the late Judge Stephen J. Roth, to whom this case was originally assigned. In that motion, defendants claimed that plaintiff failed to state a cause of action against them individually and failed to allege specific facts so as to state a cause of action under the Civil Rights Act. Judge Roth denied summary judgment on both grounds, holding that "this action is properly brought against the defendants in their individual and representative capacities as members of the governing body of the school district involved . . . It is equally clear that the complaint contains sufficient allegations of action under color of state law to state a claim for which relief can be granted . . . The actions complained of here were taken by the defendant board as official acts pursuant to the authority vested in their offices."[1] These conclusions are unchallenged at this time.

Defendants also asserted in their original motion that the state law under which they were acting did not violate any of plaintiff's federal constitutional rights. To this the Roth opinion makes basically two findings. Relying upon *Orr v. Trinter*, 444 F.2d 128 (CA 6, 1971), cert. denied 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972),[2] it was "conceded that a plaintiff would be entitled to relief if the board had refused to hire him because he had exercised his rights as guaranteed by the free speech clause of the First Amendment, the self incrimination clause of the Fifth Amendment, the due process clause of the Fifth and Fourteenth Amendments, or by the equal protection clause of the Fourteenth Amendment."[3] Recognizing that plaintiff alleges in paragraph XI of his complaint that his contract was not

---

1. "Ruling on defendant's Motion for Summary Judgment," filed March 6, 1972, p. 2.

2. Certiorari was denied subsequent to Judge Roth's opinion.

3. Ibid, at p. 3.

renewed "due to his liberal political and social philosophies and his advocacy of same," it was concluded that plaintiff sufficiently stated a federally protected right which would support a section 1983 action. In view of the holdings of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), this conclusion is not open to dispute at this time.

Judge Roth also ruled that "dismissal may have been appropriate . . . had plaintiff merely alleged violation of his civil rights because of the failure to grant him a hearing or to explain the reasons for the denial of tenure," citing *Orr v. Trinter, supra.* Since the opinion had found an alternative basis upon which to deny dismissal this aspect of plaintiff's claim was quickly passed over. The *Roth* and *Perry* decisions had not yet come down, and the question of how much procedural due process was owed to a probationary public school teacher had yet to be clarified. With the *Roth* and *Perry* decisions presently available to the parties, both now feel that summary judgment is appropriate on the procedural due process claim.

This Court has examined the issues raised herein and has carefully read *Roth, Perry,* and the other decisions cited herein of both Federal and Michigan courts. While it believes that *Roth* and *Perry* dictate the conclusion that plaintiff was denied procedural due process as required by the Fourteenth Amendment, it initially must say that plaintiff is entitled to relief under the Michigan Teacher Tenure Act (M.C.L.A. § 38.71 et seq.) standing alone.

The basic scheme employed by the Michigan Teacher Tenure Act is that a new teacher shall be deemed to be in a period of probation during the first two years of his employment. (M.C.L.A. § 38.81).

Section 3 of Article II of the Act (M.C.L.A. § 38.83) then provides:

"At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued."

Thereafter, Section 1 of Article III of the Act, (M.C.L.A. § 38.91) provides that after satisfactory completion of the probationary period, a teacher shall be employed continuously by his board and shall not be dismissed except as provided in the Act. Article IV of the Act (M.C.L.A. § 38.101 et seq.) then provides that such a teacher on continuing tenure may be discharged only for reasonable and just cause and only after charges, notice, hearing and a determination thereof.

In the instant case Daniel K. Morse commenced his employment in the fall of 1968. He taught during the 1968–69 and 1969–70 school years. The 1969–70 school year closed on June 2, 1970.

On March 12, 1970, the board decided not to renew plaintiff's contract for the 1970–71 school year, but the only notice it directed to him was the letter from Superintendent Webster, dated March 16, 1970, and it merely indicated that he had been denied tenure and his position would cease at the end of the school year. Plaintiff did not receive any written statement whatsoever concerning whether his work was satisfactory or not. The position of the board is that the March 16, 1970 letter, by implication, advised plaintiff that his work was unsatisfactory when it indicated he had been denied tenure. Such is not the law of the State of Michigan.

■■ Section 3 of Article II of the Tenure Act (M.C.L.A. § 38.83) places a

dual [4] obligation upon a Board of Education with respect to the notices which must be provided to a probationary teacher at least sixty days before the close of each school year. First, it must provide a teacher "with a definite written statement as to whether or not his work has been satisfactory." The Act further states that failure to provide such a statement is "conclusive evidence that the teacher's work is satisfactory." Second, the board must notify the teacher that his services will be discontinued. Otherwise, the board must employ the teacher for the ensuing school year.

In *Munro v. Elk Rapids Schools*, 383 Mich. 661, 178 N.W.2d 450 (1970), rev'd on reh'g 385 Mich. 618, 189 N.W.2d 224 (1971) the very issue of the dual notice requirement was placed before the Michigan Supreme Court. The Court, on rehearing held:

". . . that under the statute (the Tenure Act) unless a probationary teacher is notified in writing that his work is *unsatisfactory*, upon completion of his probationary period he is entitled to employment with tenure status with all of its specified rights and privileges." (385 Mich. p. 619–620, 189 N.W.2d p. 225.)

In so holding, the Court adopted the reasons set forth in its prior minority decision (383 Mich. p. 688, 178 N.W.2d 450). Munro, like the plaintiff here, received a notice that he would not be em-

---

4. The interpretation of the Act's requirements by the Michigan Court of Appeals as presented in *Munro v. Elk Rapids Schools*, 17 Mich.App. 368, 169 N.W.2d 527 (1969) is as follows:

"The position of the defendants as adopted by the lower court is that the statutes require 2 separate acts. First, a probationary teacher must be rated either satisfactory or unsatisfactory. If no written notice of this is sent, he is presumed to be satisfactory. Second, and entirely separate, if the board does not wish to hire the teacher after the probationary period, it must notify him 60 days before the end of the school year. If he is not so notified, he shall be employed for the ensuing year. The defendants argue that a teacher may be considered 'satisfactory' and a board may not, for some reason, wish or need to hire him. This being so, the statute does not create a duty requiring the board to hire him. We agree with this interpretation of the statutes involved." 17 Mich. App. 371, 169 N.W.2d 528.

This view effectively reduces the Act to require but one notice, that of rehiring or termination. The provision of a notice of satisfactory service is made superfluous in regard to the termination of a probationary teacher's services.

This view of the Act was rejected by Justice T. G. Kavanagh in his dissent in the *Munro* case when it was first presented to the Michigan Supreme Court. 383 Mich. 661, 688, 178 N.W.2d 450 (1970). The opinion concluded with this:

"Art II of the act provides for a probationary period and all of the other Articles deal with teachers who satisfactorily completed that period and achieved the status of 'continuing tenure'.

"Art III, Sec. 1 provides in part that 'after the satisfactory completion of the probationary period a teacher shall be employed continuously by the controlling board under which the probationary period has been completed, and shall not be dismissed or demoted except as specified in this act.' (Emphasis added.)

"The only fair reading of this section is that upon 'satisfactory completion of the probationary period' the teacher is entitled to be given tenure by that board.

" 'Shall be employed by the controlling board' takes it out of the board's hands to decide whether or not to accord tenure." Id., at 692, 178 N.W.2d at 464.

Justice Kavanagh's opinion is now the majority view (as will be clear from the further reading of this opinion).

The various provisions of the Act have now been merged so that a board is bound to rehire a probationary teacher whose services have been satisfactory in just the same way that a board is bound to rehire a tenured teacher. (This is not to say that a board must rehire a probationary teacher whose services are satisfactory. Obviously, there are reasons for letting go satisfactory probationary teachers. A board may need to cut back its staff requirements and this affects tenure and probationary teachers alike.) When a probationary teacher completes the probationary period, he cannot be fired except for cause. See n. 5, 383 Mich. at 692, 178 N.W.2d 450. There is truly a dual notice requirement in Michigan at this time. The requirement of a notice of unsatisfactory service is no longer superfluous.

ployed for the ensuing school year, but received no written notice that his work was unsatisfactory.[5] The Court specifically noted that the failure to give written notice to the teacher as to whether or not his work was satisfactory was conclusive evidence that his work was satisfactory. It further stated that the result of such failure is that a teacher has satisfactorily completed the probationary period and, therefore, entitled to that status of tenure and may not be dismissed save for reasonable and just cause and then only in compliance with the provisions of the Act (383 Mich. at p. 688–699, 178 N.W.2d 450). See to the same effect, *Fucinari v. Dearborn Board of Education,* 32 Mich.App. 108, 188 N.W.2d 229 (1971).

More recently, the Michigan Supreme Court in *Weckerly v. Mona Shores Board of Education,* 388 Mich. 731, 202 N.W.2d 777 (1972), explained its *Munro* decision thusly:

> "We have held that if no written statement is provided, the statute requires it ' "shall be considered as conclusive evidence" that the (teacher's) work is satisfactory.' We have also held that if the written statement that a contract would not be renewed fails to state whether or not the teacher's work had been satisfactory, the written statement does not meet the statutory requirements. In short, we have interpreted this section of the Teacher's Tenure Act quite literally in favor of the legislative purpose of protecting teachers' rights." (388 Mich. p. 734, 202 N.W.2d p. 779) (footnotes omitted)

Clearly, on the basis of the above authorities, the notice provided by the defendant board to the plaintiff was deficient and the plaintiff obtained tenure by operation of law having satisfactorily completed his probationary period.

Defendants have attempted to persuade this Court to reject plaintiff's claim under the Teacher Tenure Act on several alternative grounds:

First, defendants claim that whether the March 16, 1970 letter which dismissed plaintiff did or did not comply with the provisions of the Act is a disputed fact issue. This Court believes that it is a question of law and as must be clear has decided that as a matter of law the letter failed to comply with the intent of the Act.

Second, defendants assert that plaintiff has failed to exhaust state remedies with respect to the claim. Plaintiff initiated a grievance under the collective bargaining agreement which was not pursued. Plaintiff also filed an appeal of the board's decision of March 12, 1970 to the Michigan State Tenure Commission. On February 26, 1971, the Commission ruled that the appeal was not timely filed and dismissed it. The dismissal was appealed to the Circuit Court for Genesee County, but was itself dismissed, this time by consent of the parties, with prejudice.

Defendants deny that plaintiff had any contractual rights under the collective bargaining agreement which could be resorted to in order that his dismissal be avoided. Consistent with this viewpoint, defendants do not argue that plaintiff's claim be barred by a failure to pursue the grievance which he initiated. Instead, defendants believe that the specific state remedies were not utilized. Upon analysis of this agreement, it is concluded first that plaintiff had no remedy with the Tenure Commission. Michigan probationary teachers who fail to receive the statutory 60-day notice find themselves in a unique situation during the last sixty days of their probationary period. It is too late for a school district to comply with the Act

---

5. The letter which Munro received is similar to that received by plaintiff:

"I regret to inform you that on February 12, 1968, the Elk Rapids School Board directed me to notify you that you would not be offered a contract for the 1968–69 school year." 383 Mich. p. 665, 178 N.W. 2d p. 451.

and deny them tenure for the ensuing school year, but at least for those sixty days they are still probationary teachers. Since the Tenure Commission has jurisdiction only over claims which arise at a time during which the teacher is tenured, and since claims that the 60-day notice was improper must by definition arise during the probationary period, the Tenure Commission cannot hear them. The Tenure Commission has so ruled. See *Cole v. Sault Ste Marie Public Schools,* No. 73–19, dated August 28, 1973. So has the Michigan Court of Appeals in the recent case of *Lipka v. Brown City Community Schools,* 59 Mich. App. 175, 229 N.W.2d 362, 1975. See also *Fucinari v. Dearborn Board of Education,* 32 Mich.App. 108, 188 N.W.2d 229 (1971). Furthermore, the Tenure Commission dismissed plaintiff's appeal because of his failure to timely file and did not address the issues which were presented therein. Plaintiff challenged the Tenure Commission's failure to accept jurisdiction in this action in the Circuit Court; he did not present the substantive issues which confront this court. Therefore, the principles of res judicata do not bar consideration of those issues now.

■ Third, defendants contend that a federal question is not presented by plaintiff's claim that he acquired tenure due to defendants' failure to give him the proper statutory notice. It is assumed that a federal court may not adjudicate state claims. This assumption obviously ignores the doctrine of pendent jurisdiction.

In *Hurn v. Oursler,* 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), the Supreme Court stated that where there is *one cause of action* and federal jurisdiction is present on *one of the grounds for relief,* other non-federal-question grounds for relief may be adjudicated in the cause.

More recently, in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the court expanded the concept of pendent jurisdiction even further:

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged . . . The state and federal claim must derive from a common nucleus of operative fact . . . if . . . claims are such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole . . . pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its jurisdiction lies in considerations of judicial economy, convenience and fairness to litigants . . . ."

Id. at 724–726, 86 S.Ct. at 1138.

In this case, we have all of the elements necessary to exercise power over plaintiff's claim, viewed as basically a state claim arising under the Teacher Tenure Act. The federal claim which provides the original jurisdiction is that recognized first by Judge Roth: it is the claim that plaintiff was fired for exercising his right to express political and social views.

■ Fourth, upon the oral arguments of these motions, defendants' counsel made the point that defendants had "met every obligation it had at the time" to the plaintiff. Elaboration of this point was not pursued, but it may fairly be assumed that the gist of the statement is that this Court would be doing defendants an injustice to apply the teachings of *Munro* retroactively.

In March, 1970, litigation over probationary teachers' rights under the Act was minimal. The Michigan Court of Appeals had initially ruled in the *Munro* case that a board may choose not to rehire a probationary teacher without giving notice of unsatisfactory performance. On the other hand, the Michigan

Supreme Court had decided in 1960 in *Wilson v. Flint Board of Education,* 361 Mich. 691, 106 N.W.2d 136, that the failure to provide a teacher with written notice of his unsatisfactory performance was conclusive evidence that the performance was satisfactory. In *Wilson,* no notice was given to the teacher, who was placed on a third year of probation. It was held that the teacher achieved tenure status upon completion of the second probationary year because of the failure of the board to provide the statutory notice. Justice T. G. Kavanagh's dissent in *Munro* stated that that case was "controlled by the spirit" of *Wilson,* 383 Mich. p. 688, 178 N.W.2d 450. In short, at the time defendants told plaintiff he would not be hired the highest court in the state had provided the essential guidelines for defendants to follow. This in itself may negate any decision regarding the retroactive application of *Munro,* however, this Court is convinced that *Munro* should be applied to this case upon a fair reading of *Weckerly v. Mona Shores Board of Education, supra.*

In *Weckerly,* the plaintiff had been dismissed in 1968, two years prior to that of plaintiff herein. The Michigan Supreme Court applied *Wilson* and *Munro* to the facts of the case and ordered the plaintiff re-instated. While the actual question of law decided in *Weckerly* is distinguishable from either *Wilson* or *Munro,* the strong public policy toward the protection of teacher rights favored by the high court of the State of Michigan is much in evidence in that opinion. It leads this Court to believe that the general rule that all overruling decisions are operative retroactively as well as prospectively should be applied to this case.

In summary, this Court may view plaintiff's claim under the Teacher Tenure Act as a purely state claim, one which is pendent to a claim arising under 42 U.S.C. § 1983, and proceed to rule on it. In so doing, it is our belief that defendants failed to comply with the Teacher Tenure Act and as a result, plaintiff acquired tenure by operation of law and is entitled to the protection of the Act.

This conclusion serves another purpose. Plaintiff has argued that because he acquired tenure, or at least because of the failure to provide him with proper notice of his unsatisfactory performance, he also acquired a legitimate claim of entitlement to re-employment. This argument expands the State claim into a federal civil rights claim. Considering the heavy emphasis placed by the parties upon the *Roth* and *Sindermann* opinions, it is clear that both have viewed the plaintiff's claim as presenting issues which can be decided upon within the civil rights context. Before any such decision could be made, however, it would be necessary to decide that plaintiff had acquired tenure, or had a claim of entitlement—some property right—protected by the Fourteenth Amendment. Since this has been decided by the foregoing portion of this opinion, it follows that plaintiff has been denied constitutional rights as well as any rights which arise under the Teachers Tenure Act.

For the reasons stated above, the plaintiff's Motion for Summary Judgment should be granted; that of the defendants' denied. Plaintiff shall be re-instated as a tenured teacher in defendants' employ and may not be dismissed without the procedural due process afforded him by the Teacher Tenure Act. Plaintiff is also entitled to damages assessed in accordance with the guidelines set forth in *Shiffer v. Gilbralter Schools,* 393 Mich. 190, 224 N.W.2d 255 (1974). If such damages exist, they should be ascertained and presented to the Court for consideration and entry of final judgment.