BOYCE v ROYAL OAK BOARD OF EDUCATION

Docket No. 60366. Argued December 5, 1978 (Calendar No. 3).—Decided November 13, 1979.

Barbara Boyce and other probationary teachers employed by the Royal Oak Board of Education received written notice on December 16, 1975 that their employment would be terminated for economic reasons, because of a major loss of state aid to the school district in the middle of the school year, and that their last day of employment would be January 23, 1976. The probationary teachers' contract with the school board provided for termination of employment for economic reasons after ten days notice. Boyce and the others brought an action to enjoin the school board from terminating their employment. The probationary teachers argued that they had a statutory right to be employed for the entire school year 1975-1976 because they had not received written notice at least 60 days before the end of the preceding school year that their services would be discontinued. The Oakland Circuit Court, Farrell E. Roberts, J., granted summary judgment for the defendant. The Court of Appeals, V. J. Brennan, P.J., and J. H. Gillis and D. C. Riley, JJ., affirmed (Docket No. 27656). The probationary teachers appeal. *Held:*

1. The parties' contracts authorized the school board to terminate the probationary teachers' employment for economic reasons upon ten days notice, and the procedures established in the contracts admittedly were followed in each case. These contractual provisions distinguish this case from previous cases; therefore, the dismissals were valid unless the contract provisions were void under the teacher tenure act because they constituted a waiver of rights guaranteed by the statutory provision concerning the nonrenewal of probationary teachers' contracts.

2. In these cases there is no question of the teachers' compe-

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Schools § 149 *et seq.*
[2] 68 Am Jur 2d, Schools §§ 149-152, 185, 186.
[3] 68 Am Jur 2d, Schools §§ 152, 161 *et seq.*
[4] 68 Am Jur 2d, Schools §§ 167-169.
[5] 68 Am Jur 2d, Schools §§ 143, 151.

tence. The plaintiffs argue that one of the purposes of the tenure act is to give teachers employment security and that if a probationary teacher foregoes the opportunity to seek other employment during the preceding summer months in reliance on the statute, there should be a statutory right to employment through the school year. This argument cannot apply to the teachers who were not hired by the defendant until the fall of 1975, but it is relevant to the two probationary teachers who were under contract 60 days before the end of the previous school year. However, the statute does not confer an absolute right on any teacher to employment for the duration of the school year which cannot be terminated for any reason. Even a tenured teacher can be dismissed under the statute because of a necessary reduction in personnel. The statute cannot be construed to afford probationary teachers more protection than is given to tenured teachers. The contract provision authorizing termination for economic reasons is not a waiver of rights or privileges under the tenure act.

3. Some states have tenure acts which through a variety of means prohibit the midyear dismissals of probationary teachers for economic reasons. Other states' statutes permit the dismissal, suspension or layoff of probationary teachers for lack of need of their services or for economic reasons. Still other statutes do not directly address or resolve this issue. Michigan's teacher tenure act is the only statute using the language "shall be employed" with reference to the effect of failure to notify a probationary teacher that the teacher's services will be discontinued. This provision must be construed in light of the purposes of the statute. If teachers in Michigan wish to create a prohibition against discharge of probationary teachers for economic reasons, they must address themselves to the proper forum for resolving these concerns, either the Legislature or the forum of contract negotiations.

4. Adoption of the construction of the statute urged by the plaintiffs would lead to inequitable results. A probationary teacher could not be discharged or could only be discharged with compensation at any time until the end of the school year, even if that teacher's continued employment threatened the lives and safety of the children at the school or would irreparably disrupt the efficient operation of the school. It would afford the probationary teacher a statutory right to employment for the duration of the school year even if the operation of the school were discontinued. In short, the rights of probationary teachers would be greater than those of tenured teachers. That

was not the intention of the Legislature. Therefore, the teacher tenure act does not prohibit a controlling school board from reserving the right by contract to discharge a probationary teacher during the school year for economic reasons.

Affirmed.

76 Mich App 526; 257 NW2d 153 (1977) affirmed.

1. SCHOOLS AND SCHOOL DISTRICTS — TEACHER TENURE ACT — LEGISLATIVE PURPOSE.

The teacher tenure act was intended to provide probationary teachers with some employment security by protection from arbitrary dismissal, but it was not intended to give them a right to continuous employment throughout the school year regardless of future developments (MCL 38.71 *et seq.;* MSA 15.1971 *et seq.).*

2. SCHOOLS AND SCHOOL DISTRICTS — TEACHER TENURE ACT — CONSTRUCTION.

The teacher tenure act is to be construed against the background of the evils sought to be cured by its enactment (MCL 38.71 *et seq.;* MSA 15.1971 *et seq.).*

3. SCHOOLS AND SCHOOL DISTRICTS — TEACHER TENURE ACT — PROBATIONARY TEACHERS — DISMISSAL.

A tenured teacher can be dismissed from employment because of a necessary reduction in personnel; it cannot in good conscience be said that the statutory phrase that a probationary teacher "shall be employed" for the duration of the school year in the absence of proper notice of dismissal from employment was intended to afford probationary teachers greater protection than tenured teachers possess under the statute (MCL 38.83, 38.91, 38.101, 38.105; MSA 15.1983, 15.1991, 15.2001, 15.2005).

4. SCHOOLS AND SCHOOL DISTRICTS — TEACHER TENURE ACT — PROBATIONARY TEACHERS — EMPLOYMENT CONTRACT — DISMISSAL.

The teacher tenure act does not grant even a tenured teacher an absolute guaranty of employment, because even a tenured teacher can be dismissed because of a necessary reduction in personnel; therefore, a contract provision authorizing dismissal for economic reasons is not a waiver of the probationary teacher's rights or privileges under the teacher tenure act (MCL 38.83, 38.172; MSA 15.1983, 15.2054).

5. SCHOOLS AND SCHOOL DISTRICTS — TEACHER TENURE ACT — PROBATIONARY TEACHERS.

The argument that construction of the Michigan teacher tenure

act to not prohibit midyear dismissals of probationary teachers for economic reasons renders the rights of probationary teachers in Michigan patently inferior to those of such teachers in some other states must fail; if teachers in Michigan wish to create a prohibition against discharge of probationary teachers for economic reasons, they must address themselves to the proper forum for resolving these concerns, either the Legislature or the forum of contract negotiation with the school boards (MCL 38.83; MSA 15.1983).

*Kemp, Klein, Endelman & Beer, P.C.* (by *Louis D. Beer, Thomas L. Boyer,* and *John R. Runyan, Jr.),* for plaintiffs Barbara Boyce, Dorothy Klegon, Bruce Kozlowski, Anna Popovich, Judith Brusca, and Linda Cerveny.

*Shifman & Goodman, P.C.,* for defendant.

COLEMAN, C.J. Plaintiffs-appellants (hereinafter, plaintiffs), probationary schoolteachers, were employed by defendant during the 1975-1976 school year pursuant to a contract which provided, *inter alia,* for termination for economic reasons after ten days notice.[1] On or about December 16, 1975, each plaintiff received written notice that his or her contract was being terminated for economic reasons and that the last day of employment would be January 23, 1976.[2] Plaintiffs filed suit

[1] All were in the first year of probationary teaching except Dorothy Klegon who was in her second year. Linda Cerveny had taught since February 5, 1975, and had not reached her first anniversary when her 1975-1976 contract was terminated. However, her contract noted at the bottom: "Second Year Probation". From the notices of termination, it appears that Judith Brusca and Linda Cerveny were given part-time positions. Tenured teachers, Korn, Savage and Adams, do not join in this appeal.

[2] By an executive order of the Governor, issued in December, 1975, the school district was faced with a loss of $292,000 in state aid which had been budgeted for the 1975-1976 school year. In response, the board of education eliminated all capital outlays and expenditures for consumable goods, delayed the driver education program and omitted the spring sports program of the junior high school. The board was still faced with approximately a $142,000 deficit, so it decreased the

seeking to enjoin defendant from terminating their contracts. Plaintiffs claim that they had a statutory right to be employed for the duration of the 1975-1976 school year because they were not notified at least 60 days before the end of the preceding school year that their services were being discontinued as required by MCL 38.83; MSA 15.1983. MCL 38.83; MSA 15.1983 provides:

"At least 60 days before the close of each school year the controlling board shall provide the probationary teacher with a definite written statement as to whether or not his work has been satisfactory. Failure to submit a written statement shall be considered as conclusive evidence that the teacher's work is satisfactory. Any probationary teacher or teacher not on continuing contract shall be employed for the ensuing year unless notified in writing at least 60 days before the close of the school year that his services will be discontinued."

Plaintiffs maintain that the board was thereby prohibited from terminating their contracts in midyear. Defendant filed a motion for summary judgment on the basis that the discharges were authorized by and made in accordance with the provisions of the parties' contracts governing discharges for economic reasons. The trial court granted defendant's motion for summary judgment and the Court of Appeals affirmed, see *Boyce v Royal Oak Board of Education*, 76 Mich App 526; 257 NW2d 153 (1977). Plaintiffs applied for leave to appeal and leave was granted, limited to the issue of: "[W]hether MCL 38.83; MSA 15.1983 applies to probationary teachers whose services are discontinued for economic reasons."[3] We hold

staff in accordance with the master contract terms. Plaintiffs do not allege bad faith or question the reduction of revenues. The issue in this case is solely one of statutory construction.

[3] See *Boyce v Royal Oak Board of Education*, 402 Mich 894 (1978).

that it does not apply to termination for economic reasons.

## I

The parties' contracts authorized the board to terminate the contracts for economic reasons upon ten days notice[4] and established certain procedures which admittedly were followed in each case. These contractual provisions allowing termination for economic reasons distinguish this case from *Bruinsma v Wyoming Public Schools,* 38 Mich App 745; 197 NW2d 95 (1972); *Smith v School Dist No 2 of Pleasant Plains,* 69 Mich 589; 37 NW 567 (1888). Therefore, the dismissals were valid unless under MCL 38.172; MSA 15.2054[5] the contract provisions were void because they constituted a

[4] The contract provided:

"This contract is subject to termination by either party upon written notice at least ten (10) days prior to the effective date of termination, except for termination caused by failure to perform under the terms of the contract which will require no notice of termination. The School District will not terminate this contract except for breach of the contract unless there is in the judgment of the Board of Education of the School District the *[sic]* insufficient revenue during the school year to continue the payment of the salary called for in this contract. In case of termination, salary will be paid for the period that services are performed on a pro rata basis based on the entire school year."

[5] "No teacher may waive any rights and privileges under this act in any contract or agreement made with a controlling board. In the event that any section or sections of a contract or agreement entered into between a teacher and a controlling board make continuance of employment of such teacher contingent upon certain conditions which may be interpreted as contrary to the reasonable and just causes for dismissals, provided by this act, such section or sections of a contract or agreement shall be invalid and of no effect in relation to determination of continuance of employment of such teacher."

The holding in this case concerns the first sentence of MCL 38.172; MSA 15.2054. It holds that a probationary teacher does not waive any rights under the tenure act by entering into a contract with the controlling board whereby the board reserves the right to dismiss the teacher for economic reasons. The holding does not address the situation involving a contract which does not authorize the board to terminate the contract for economic reasons.

waiver of rights guaranteed by MCL 38.83; MSA 15.1983.

## II

MCL 38.83; MSA 15.1983 is the only section of the teacher tenure act which governs the nonrenewal of probationary teachers' contracts. It provides that if a probationary teacher is not notified at least 60 days before the end of the school year that his or her services will be discontinued, the teacher shall be employed for the ensuing year. Plaintiffs claim that because this procedure is the only one expressly mentioned in the act, it is the exclusive procedure by which a probationary teacher's services can be terminated. Plaintiffs were not notified at least 60 days before the end of the last school year that their services were being discontinued and so they claim that they had a statutory right to be employed for the duration of the school year in question. It is of interest to note that only two of the plaintiffs were hired during that period.

The provisions of MCL 38.83; MSA 15.1983 were designed to provide the probationary teacher with notice of whether his or her services were satisfactory and whether his contract would be renewed. Notice of whether a teacher's services were satisfactory could protect the teacher from arbitrary discharge and aid the teacher in evaluating and improving his services. This information may also help the teacher decide whether to continue on as a probationary teacher in the present position or to seek other employment opportunities. Another purpose behind the provisions of MCL 38.83; MSA 15.1983 is to provide the probationary teacher with notice as to employment status for the ensuing year. A teacher whose services are thus discon-

tinued is thereby afforded sufficient notice to seek other employment opportunities during the summer months when most of the hiring of teachers occurs.

## III

The first purpose served by MCL 38.83; MSA 15.1983—notifying probationary teachers of whether their services were satisfactory—cannot be said to apply directly to discharges caused by economic reasons, see *Boyce, supra,* 531, *Steeby v Highland Park School Dist,* 56 Mich App 395, 397; 224 NW2d 97 (1974). In our cases, there is no question as to the teachers' competence. However, plaintiffs claim that the other purpose served by MCL 38.83; MSA 15.1983—giving teachers employment security—does apply to discharges motivated by economic considerations. They argue that if a teacher foregoes the opportunity to seek other employment during the preceding summer months in reliance on MCL 38.83; MSA 15.1983, there should be a statutory right to employment through the next school year. Although we recognize that this argument cannot apply to the teachers not hired until the fall of 1975, it is relevant to the two teachers who were under contract 60 days before the end of the previous school year.

Contrary to plaintiffs' interpretation of MCL 38.83; MSA 15.1983, the failure to notify a probationary teacher at least 60 days before the end of the school year that his or her services would be discontinued does not confer a statutory right to employment for the duration of the next school year which cannot be terminated for any reason. The teacher tenure act was intended to provide probationary teachers with some employment security in the sense of protection from arbitrary

dismissal, but it was not intended to give them a statutory right to continuous employment throughout the school year regardless of any possible future developments. In *Rehberg v Melvindale, Ecorse Twp School Dist No 11,* 330 Mich 541, 545, 547-548; 48 NW2d 142 (1951), this Court stated:

"Its purpose is to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference.

"It promotes good order and the welfare of the State and of the school system by preventing removal of capable and experienced teachers at the personal whims of changing office holders.

\* \* \*

"The tenure act was enacted for the purpose of protecting teachers from being discharged or demoted from a continuing tenure except for 'reasonable and just cause' \* \* \*.

\* \* \*

"The tenure act places an additional safeguard upon the arbitrary or unreasonable dismissal of teachers and is designed for their protection. It does not, however, otherwise diminish or interfere with the administrative power of the local controlling board, nor require it to indulge in idle ceremonies."[6] (Citations omitted.)

---

[6] See, also, *Amato v Oxford Area Community School Dist No 7,* 402 Mich 521; 266 NW2d 445 (1978), *Munro v Elk Rapids Schools,* 383 Mich 661, 691; 178 NW2d 450 (1970), *rev'd (On Rehearing),* 385 Mich 618; 189 NW2d 224 (1971), *Wilson v Flint Board of Education,* 361 Mich 691; 106 NW2d 136 (1960), *Freiberg v Board of Education of Big Bay De Noc School Dist,* 61 Mich App 404; 232 NW2d 718 (1975), *Blurton v Bloomfield Hills Board of Education,* 60 Mich App 741; 231 NW2d 535 (1975), *Bruinsma v Wyoming Public Schools,* 38 Mich App 745; 197 NW2d 95 (1972).

In *Wilson v Flint Board of Education, supra,* this Court stated that one of the purposes behind the teacher tenure act was to reduce the large turnover in the teaching profession. The Court quoted from a study in Comment, *Constitutional Law—Schools and School Districts —Teachers' Tenure Legislation,* 37 Mich L Rev 430, 431-432 (1939), which stated that:

"The large turnover in the profession was due in part to certain practices which were widespread throughout the country; among

"It is against this background of the evils sought to be cured by statutory enactment that we proceed to an interpretation thereof", *Wilson v Flint Board of Education,* 361 Mich 691; 106 NW2d 136 (1960).

MCL 38.83; MSA 15.1983 provides that if the teacher does not receive a 60-day notice that his or her services will be discontinued, the teacher "shall be employed for the ensuing year". Plaintiffs argue that this section of the teacher tenure act should be interpreted literally to protect probationary teachers' rights, see *Shiffer v Board of Education of Gibraltar School Dist,* 393 Mich 190; 224 NW2d 255 (1974).[7]

However, the phrase "shall be employed for the

them may be noted discharge (1) because of political reasons, (2) because of nonresidence in the community, (3) in order to make places for friends and relatives of board members or influential citizens, (4) in order to break down resistance to reactionary school policies, and (5) in order to effect economies either by diminishing the number of teachers and increasing the amount of work assigned to those retained, or by creating vacancies to be filled by lower salaried, inexperienced employees. Of these practices the first was exceedingly influential in the growth of the tenure movement, some of the more notorious cases of political dismissal challenging the attention of the public to the injury to professional morale and efficiency resulting from the misuse of the control vested in the administrative agencies. The remedy for such abuses was sought in legislation designed to strip the school boards of their autocratic power and to prescribe for them rules of administrative action which would ensure a greater degree of security to their employees."

See, also, *Munro v Elk Rapids Schools, supra, Freiberg v Board of Education of Big Bay De Noc School Dist, supra.* The study recognizes that teachers, as are all employees, are justifiably concerned about the relative security of their employment positions and with whether their positions might be reduced or eliminated for economic reasons. However, the study goes on to state,

"If conditions warrant it, the board has the undoubted authority to discontinue certain types of instruction; * * *. Every tenure statute contains the qualification that its provisions are not to apply in case there is such a diminution in the number of pupils as to necessitate the dismissal of a teacher." 37 Mich L Rev 434.

[7] See *Lipka v Brown City Community Schools,* 399 Mich 704; 252 NW2d 770 (1977), *rev'd (On Rehearing),* 403 Mich 554; 271 NW2d 771 (1978); *Weckerly v Mona Shores Board of Education,* 388 Mich 731;

ensuing year" is not an absolute guaranty of employment for the duration of that year.[8] MCL 38.91; MSA 15.1991 also uses the phrase "shall be employed" in requiring that a board continuously employ tenured teachers, but it does not grant even a tenured teacher an absolute guaranty of employment. The employment security offered by the statute is protection from arbitrary and capricious dismissal. Even a tenured teacher can be dismissed based on a necessary reduction in personnel, MCL 38.105; MSA 15.2005.[9] We cannot in good conscience say that the phrase "shall be employed" in MCL 38.83; MSA 15.1983 was intended to afford probationary teachers greater protection than tenured teachers possess under MCL 38.91 *et seq.;* MSA 15.1991 *et seq.*[10] The failure to provide a probationary teacher with notice 60 days before the end of the school year that his or her services would be discontinued does not confer upon the teacher an absolute statutory right to employment for the duration of the next school year which cannot be terminated for any

202 NW2d 777 (1972); *Goodwin v Board of Education of the School Dist of Kalamazoo,* 82 Mich App 559; 267 NW2d 142 (1978).

[8] See *Munro, supra,* 383 Mich 692, fn 5; see, also, MCL 380.1806; MSA 15.41806.

[9] MCL 38.105; MSA 15.2005 provides:

"Any teacher on permanent tenure whose services are *terminated because of a necessary reduction in personnel* shall be appointed to the first vacancy in the school district for which he is certified and qualified." (Emphasis added.)

Implicit in this section is the authority to terminate for personnel reduction, see *Steeby v Highland Park School Dist,* 56 Mich App 395; 224 NW2d 97 (1974), *Bruinsma v Wyoming Public Schools,* 38 Mich App 745; 197 NW2d 95 (1972).

[10] See *Munro, supra; Freiberg, supra.*

Although MCL 38.83; MSA 15.1983 does not contain any language referring to demotions and discharges as does MCL 38.91; MSA 15.1991, this does not mean that probationary teachers cannot ever be dismissed or demoted. The language in MCL 38.91; MSA 15.1991 is a limitation on the board's common-law authority to dismiss rather than an affirmative grant of authority which the board would not otherwise have.

reason. Therefore, the contract provision authorizing termination of the contract for economic reasons does not waive any rights or privileges under the tenure act.

## IV

It is argued by plaintiffs that this construction of MCL 38.83; MSA 15.1983 renders the rights of probationary teachers in Michigan patently inferior to those of such teachers in other states. This argument as a policy consideration must fail. Some states have tenure acts which through a variety of means prohibit the midyear dismissals of probationary teachers for economic reasons. Other states' statutes permit the dismissal, suspension or layoff of probationary teachers for lack of need of the teacher's services or for economic reasons.[11] Still other statutes do not directly address or resolve this issue.

MCL 38.83; MSA 15.1983 is the only statute using the language "shall be employed" with reference to the effect of failure to notify a probationary teacher that the teacher's services would be discontinued. This provision must be construed in light of the purposes of the statute, see *Wilson, supra.* If teachers in Michigan wish to create a prohibition against discharge of probationary teachers for economic reasons, they must address themselves to the proper forum for resolving these concerns, either the Legislature or the forum of contract negotiations.

[11] See Ala Code, tit 52, § 358, Ariz Rev Stat § 15-257, Colo Rev Stat § 22-63-102(3), Ga Code Ann § 32-2101c(a)(6), Hawaii Rev Stat § 297-11, Burns Ind Stat Ann (1978 Cum Supp), § 20-6.1-4-10.5(a)(5), Minn Stat Ann § 125.17(4)(5), Mo Ann Stat § 168.221(5), Nev Rev Stat § 391.312(g), NJ Stat Ann § 18A:28-9, NC Gen Stat § 115-142(e)(1)(l), Or Rev Stat § 342.835, Pa Stat Ann, tit 24, § 11-1124, RI Gen Laws § 16-13-6, Tenn Code Ann § 49-1410, Utah Code Ann (1977 Cum Supp) § 53-51-8, W Va Code § 18A-2-2, Wis Stat Ann § 118.23(4).

V

Furthermore, adoption of the construction of MCL 38.83; MSA 15.1983 urged by plaintiffs would lead to inequitable results. A probationary teacher could not be discharged, or only discharged with compensation, at any time until the end of the school year, even if that teacher's continued employment threatened the lives and safety of the children at the school or would irreparably disrupt the efficient operation of the school. It would afford the probationary teacher a statutory right to employment for the duration of the school year even if the operation of the school were discontinued.

In short, the rights of probationary teachers would be greater than those of tenured teachers. We find that that was not the intention of the Legislature.

Accordingly, we hold that the notice provisions of MCL 38.83; MSA 15.1983 do not apply to discharges for economic reasons so as to prohibit a controlling board from reserving the right by contract to discharge a probationary teacher during the school year for economic reasons.[12] Therefore, the contract provisions in this case were not invalid under MCL 38.172; MSA 15.2054.

Affirmed.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with COLEMAN, C.J.

---

[12] In *East Detroit Federation of Teachers, AFT Local 698 v East Detroit Board of Education,* 55 Mich App 451, 453; 223 NW2d 9 (1974), the Court of Appeals stated in dictum that they were holding that MCL 38.83; MSA 15.1983 applied to dismissals for economic reasons. To the extent that this language is inconsistent with this Court's holding, we specifically overrule it.